IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                             No. CR 09-0312 JB

KALVEST GANADONEGRO,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the United States' Motion *In Limine* #3 to Permit Admission of the United States' Exhibit #1, filed August 29, 2011 (Doc. 160). The Court held a hearing on August 31, 2011. The primary issue is whether the Court should allow admission of Plaintiff United States of America's exhibit #1 -- a photograph of the victim, Jane Doe, in life. The Court will allow admission of the United States' Exhibit #1. The photograph has some probative value, because the size of Doe's head -- and whether her head size was abnormal -- is at issue, and because the photograph has a tendency to make the existence of a fact of consequence to the determination of the action more or less probable. The danger of unfair prejudice does not substantially outweigh the probative value of the photograph.

**PROCEDURAL BACKGROUND**

On February 11, 2009, a federal grand jury charged Defendant Kalvest Ganadonegro with first-degree murder pursuant to 18 U.S.C. §§ 1111(a) and (c)(3) and 1153. See Doc. 30. Ganadonegro has not pled guilty, and trial is set to commence on September 1, 2011.

On August 29, 2011, the United States filed the United States' Motion *In Limine* #3 to Permit

Admission of the United States' Exhibit #1.  See Doc. 160.  The United States argues that, as part of its case-in-chief, it plans to introduce a photograph of the victim before her death during direct examination of the victim's mother, Quintara Smiley.  The photograph is of Jane Doe, sitting on a couch by herself.  The United States asserts that it does not plan to display the photograph during its opening or closing.  The United States represents that, in reviewing its exhibits, Ganadonegro has indicated that he will object to the admission of the photograph pursuant to rules 401 and 403 of the Federal Rules of Evidence.  The United States argues that it is its burden to establish the identity of the deceased child and that the proposed photograph does that.  It further argues that the defense experts have made issue of particular physical characteristics of the child, including her head size and her ability to sit up and hold up her head.  It argues that, because the photograph was taken when Doe was seven to eight months of age, and because Doe died when she was approximately nine months, the photograph will show her physical characteristics and abilities in the weeks before her death.  The United States argues that the photograph's probative value far outweighs the danger of unfair prejudice, because, given the genuine issues in the case related to Doe's identity and her physical characteristics and abilities in the time leading to her death, the probative value is significant, and because a jury instruction will lessen the effect of any prejudice such a photograph might have.

      At the hearing, Ganadonegro represented that, at trial, his experts will present testimony regarding head size.  He stated, that, at some point in Doe's development, her head began to increase in size, and that this increase was not proportionate to the increase or the growth she experienced in the rest of her body.  He also represented that his experts will discuss head size by relying on infant growth charts and will testify that Doe's head size was abnormal.  Ganadonegro argued that the photograph predates the increase in Doe's head size and that the photograph is thus not

particularly relevant.  The United States represented that it could limit its introduction of this evidence through showing it to Jean Ryan, a nurse practitioner who saw Doe on a regular basis, and not through Smiley.  The United States stated that Ryan had seen the baby before her death and could testify about the size of Doe's head and whether the picture depicts Doe as Ryan saw her during Doe's check-ups.

## ANALYSIS

The Court will allow the admission of the United States' Exhibit #1.  The Tenth Circuit reviews "the admission of photographs for an abuse of discretion."  United States v. Treas-Wilson, 3 F.3d 1406, 1410 (10th Cir. 1993)(citations omitted).  A "district judge must balance the prejudicial effect of the photographs against their probative value," and the district court's "exercise of discretion that is rarely disturbed."  United States v. Treas-Wilson, 3 F.3d at 1410 (citations omitted).

In United States v. Pettigrew, 468 F.3d 626 (10th Cir. 2006), the United States Court of Appeals for the Tenth Circuit held that a district court did not abuse its discretion when it allowed the United States to present photographs of a victim before the crime.  The defendant was on trial for involuntary manslaughter of a mother and assault against members of the mother's family arising from an automobile accident.  The Tenth Circuit decided that a photograph of the mother, while living and with other members of her family, was not unduly prejudicial, but the manner in which the United States displayed the photograph troubled the Tenth Circuit.  The Tenth Circuit stated:

> At trial, the Government sought to admit into evidence a photograph depicting all four members of the Beasley family, including Carrie Beasley while she was living.  Mr. Pettigrew objected, arguing that it was not offered for any proper purpose and that it would be unduly prejudicial.  The District Court stated that it would allow the photo to be admitted for the purpose of identification of the victims.  Despite this ruling, the Government did not actually move the photo into evidence.  Instead, <u>the Government merely displayed the photo during its opening statement,</u>

> used it to establish Ms. Beasley's identity through the testimony of Mr. Beasley, and displayed it again during its closing arguments. The jury convicted Mr. Pettigrew on all counts.
>
> . . . .
>
> Mr. Pettigrew next challenges the display of the family photograph at trial. He argues that the District Court's admission of the photo was unfairly prejudicial and warrants a new trial. Fed. R. Evid. 403. The admission of photographs into evidence is reviewed for an abuse of discretion. United States v. Treas-Wilson, 3 F.3d 1406, 1410 (10th Cir. 1993). "[T]he district judge must balance the prejudicial effect of the photographs against their probative value, an exercise of discretion that is rarely disturbed." Id.
>
> A photograph of a victim while living is admissible to prove the identity of the victim. See United States v. Joe, 8 F.3d 1488, 1499 (10th Cir. 1993). The District Court acknowledged that a photo of the victim could stir up sympathy and emotions in the jurors, but concluded that any prejudice did not substantially outweigh its probative value since the Government had the burden to establish the identity of the victim. The court also cautioned the jury to "base your verdict solely upon the evidence without prejudice or sympathy," a sentiment echoed by the prosecutor during his closing argument.
>
> We cannot say that the District Court abused its discretion in permitting the jury to see the photo during several phases of the trial. We are troubled by the Government's decision to display a photo of Carrie Beasley with the rest of her family and refer to it while saying that she did not make it home that night. But all four of the individuals depicted in the photo were victims in the crime. Three of them -- including Carrie Beasley -- did not appear in court. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter . . . ." United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991) (quotation omitted). Accordingly, we will not disturb the District Court's balancing of these factors. That said, we must admonish the Government -- the proffering of a photograph of the deceased victim, while living and posed with her family, as opposed to a photo depicting only the decedent, "needlessly pushes the prosecutorial envelope, and could, if coupled with errors not present here, jeopardize a conviction." United States v. Jones, 24 Fed. Appx. 968, 975 (10th Cir. 2001).

468 F.3d at 632, 638 (emphasis added). The Tenth Circuit thus held that photographs of victims who do not appear in court may be "[r]elevant evidence" for use in establishing the identity of the victims. The Tenth Circuit cautioned against inflammatory statements, such as "saying that she did

not make it home that night," and displaying a victims photograph during opening and closing arguments.  468 F.3d at 638.

The photograph has some probative value.  There is not an issue about Doe's identity or whether Doe was alive before she was killed.  At best, these are phantom issues.  There is an issue, however, over the size of Doe's head.  It appears that a nurse practitioner -- Ryan -- will testify that Doe's head size looked normal to her and that some defense experts will testify that Doe's head size was abnormal.  The photograph depicts Doe and Doe's head.  The jurors can look at the photograph and bring their common-sense judgment to their determination of the issue.  Ganadonegro argues that Doe's head size did not increase until after the photograph was taken, but the photograph was taken when Doe was approximately seven months old, and Doe died when she was nine months old; the United States does not agree that the picture was not taken before Doe's head size increased.  See Transcript of Hearing at 13:4-10 (taken August 31, 2011)(Rozzoni)(stating that Doe was in the 75th percentile at her appointment approximately a week before the photograph was taken and that she was in the 90th percentile during the autopsy after the injuries took place).[1]  Further, the Court, when it first look at the photograph, thought Doe's head looked large.[2]  The evidence is thus not independently as precise as Ganadonegro suggests; the jury should use the photograph to make its own judgment.  Because there is an issue whether Doe's head size increased in the time preceding her death, a photograph of Doe in the time preceding her death has some "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The Court thus finds that the

---

[1] The Court's citations to the transcripts are to the Court Reporter's original, unedited versions. Any final versions may contain different line and/or page numbers.

[2] Doe was wearing a cap with sunglasses on the cap.

photograph has some probative value.

The danger of unfair prejudice does not substantially outweigh the probative value of the evidence. Unlike the photograph in United States v. Pettigrew, the photograph does not depict Doe sitting with her family -- Doe is the only person in the photograph. Furthermore, unlike the photograph used in United States v. Pettigrew, where the government displayed the photograph during its opening statement and closing argument, the United States has represented that it does not plan to use the photograph in its opening statement or closing argument. "Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter . . . ." United States v. Sides, 944 F.2d 1554, 1563 (10th Cir.1991)(quotation omitted)(emphasis in original). The Court can mitigate the prejudice that will result from introduction of the photograph.

The United States represents that it seeks to introduce the photograph for these purposes: (i) Doe's identity; (ii) whether Doe was alive before she was killed; and (iii) Doe's head size. The Court will allow the United States to introduce the evidence only through Ryan's testimony and not through Smiley's testimony. Smiley's testimony is not needed to promote any of the purposes; the photograph may be relevant to Ryan's testimony regarding Doe's appearance when Ryan saw her. The United States may not mention or use the photograph in its opening statement or closing argument. Ganadonegro may draft or request a limiting instruction regarding the photograph. With these limits, the Court believes the danger of unfair prejudice does not substantially outweigh the photograph's probative value. The Court will thus allow admission of the United States' Exhibit #1.

**IT IS ORDERED** that the United States' Motion *In Limine* #3 to Permit Admission of the United States' Exhibit #1, filed August 29, 2011 (Doc. 160), is granted. The Court will permit the admission of Plaintiff United States of America's Exhibit #1 during the trial in accordance with this

Memorandum Opinion and Order. The Plaintiff United States of America may not mention or use the photograph in its opening or closing. The United States may use the photograph only during its examination of Jean Ryan.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Presiliano Torrez
Jennifer M. Rozzoni
  Assistant United States Attorneys
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
Brian A. Pori
  Assistant Federal Public Defenders
Albuquerque, New Mexico

      *Attorneys for the Defendant*