**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                     No. CR 09-0312 JB

KALVEST GANADONEGRO,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Motion to Continue Trial, filed January 17, 2012 (Doc. 234)("Motion").  The Court held a hearing on January 17, 2012.  The primary issue is whether the Court should continue the trial setting for January 23, 2012 for approximately forty-five days.  Because the Court believes that the ends of justice support granting the continuance, the Court will grant the Motion.  The Court will, however, set the trial for February 27, 2012, approximately thirty-five days from the current trial date.

**FACTUAL BACKGROUND**

This case arises out of the death of a nearly ten-month-old baby, Q.S., who died while in Ganadonegro's care on November 21, 2008.  See Memorandum Opinion and Order at 2, filed August 10, 2011 (Doc. 132)("MOO").   On November 22, 2009, law enforcement officers interviewed Ganadonegro.  See MOO at 2.  During the interview, Ganadonegro stated:

> KALVEST GANADONEGRO: She was just sitting there first, and then I was playing with my son, and then all of a sudden she just started crying.  She wanted me to pick her up.
>
> DETECTIVE BEN: Okay.
>
> KALVEST GANADONEGRO: And I picked her up, and she still . . . she still was crying.

DETECTIVE BEN: Okay.

KALVEST GANADONEGRO: She . . . and then at the same time, my friend was over here crying at me.

DETECTIVE BEN: Okay.

KALVEST GANADONEGRO: I told my son, "Wait, I've got to take care of [Q.S.]" And I was carrying her around, and then she couldn't stop crying, so I tried giving her a bottle, and I tried giving her food or candy.

DETECTIVE BEN: Mmm hmm.

KALVEST GANADONEGRO: And then after that, I kind of shook her. I shook her like this. I told her, "[Q.S.], please stop crying."

UNIDENTIFIED DETECTIVE: Was it . . . but it sounds like you were . . . you got very . . . you were very frustrated.

KALVEST GANADONEGRO: Yeah. I went like that.

DETECTIVE BEN: Okay, so this was . . . .

KALVEST GANADONEGRO: Her head went . . . her head popped back.

DETECTIVE BEN: Kalvest, this . . . I don't think you were . . . you've been very frustrated with a lot of different things probably going on at home. Right?

KALVEST GANADONEGRO: Yeah.

. . . .

DETECTIVE BEN: But Kalvest . . . I know you didn't Kalvest. But hear me out. Okay? Okay? Tell me how many times you shook her.

KALVEST GANADONEGRO: I shook her like three times. Like kind of hard thrusts.

Transcript of Kalvest Ganadonegro Interview at 51:2-52:3, 56:4-5 (taken November 22, 2009), filed April 7, 2011 (Doc. 112-1)("Tr. of Ganadonegro Interview"). One of the detectives asked Ganadonegro, "And she continued crying?" Tr. of Ganadonegro Interview at 56:15-16. Ganadonegro responded: "Yeah. And I tried telling her, 'Don't . . . please stop crying.' . . . When

I picked her back up . . . I said, 'Stop crying [Q.S.]' I shook her again . . . once again, like that.  And then I sat her down like this, and she fell back and hit the board."  Tr. of Ganadonegro Interview at 56:17-24.

## PROCEDURAL BACKGROUND

Ganadonegro went to trial on charges of intentional child abuse, charged as first-degree murder, on September 1, 2011.  See Clerk's Minutes, filed September 1, 2011 (Doc. 192).  The jury hung, and the Court declared a mistrial.  See Jury Notes at 2-4, filed September 13, 2011 (Doc. 194). The Court then reset the jury trial for November 14, 2011.  See Notice of Hearing, entered October 7, 2011 (Doc. 191).  On October 31, 2011, Ganadonegro filed an unopposed motion to continue this trial setting based on the following developments in the case: (i) indications that Plaintiff United States of America planned to file a superseding indictment which included additional counts; (ii) Ganadonegro's plans to consult with additional medical experts for the upcoming trial; (iii) the United States' need to address the opinions of these new experts, including by seeking new experts of its own; (iv) the inability of each side to have out-of-state expert witnesses testify on those dates; and (v) potential plea negotiations.  See Unopposed Eighth Motion to Continue Trial at 1-3, filed October 31, 2011 (Doc. 199).  After weighing the applicable factors, the Court granted this unopposed motion to continue and reset the trial for November 28, 2011.  See Eighth Order Granting Continuance of Trial at 1, filed November 3, 2011 (Doc. 200).

On October 9, 2011, the United States superseded the indictment with a new one charging three separate charges: (i) second-degree murder in violation of 18 U.S.C. § 1111; (ii) voluntary manslaughter in violation of 18 U.S.C. § 1112; and (iii) negligent child abuse resulting in death in violation of N.M.S.A. 1978, § 30-6-1(D)(1) and 18 U.S.C. § 3.  See Superseding Indictment, filed November 9, 2011 (Doc. 201).  On November 17, 2011, Ganadonegro filed an unopposed motion

to continue the November 28, 2011, trial setting on the following bases: (i) the United States had charged several additional counts in the Superseding Indictment; (ii) the new counts rely on different theories of prosecution; (iii) continuing consultations and difficulties related to obtaining new experts; (iv) potential plea negotiations; and (v) the unavailability of one of Ganadonegro's key expert witnesses, Dr. Jan Leestma, until March 2012. See Unopposed Ninth Motion to Continue Trial at 1-4, filed November 17, 2011 (Doc. 207). After weighing the applicable factors, the Court granted this unopposed motion to continue and reset the trial to January 23, 2012. See Ninth Order Granting Continuance of Trial, filed November 21, 2011 (Doc. 208).

On December 6, 2011, Ganadonegro filed his Motion to Dismiss Count 3. See Doc. 218. In this motion to dismiss, he seeks dismissal of one of the newly added counts in the Superseding Indictment. See Motion to Dismiss Count 3, at 2-8. On December 8, 2011, Ganadonegro filed his Second Motion in Limine to Exclude Testimony Regarding Intent and Burden of Proof. See Doc. 219 ("Motion in Limine"). In this Motion in Limine, he seeks a ruling from the Court that certain testimony regarding his mental state is inadmissible. See Motion in Limine at 1. On January 3, 2012, Ganadonegro filed the Defendant's Motion to Dismiss. See Doc. 228. In this motion to dismiss, he seeks dismissal of the entire Superseding Indictment. See Defendant's Motion to Dismiss at 1.

On January 17, 2012, Ganadonegro filed his opposed Motion seeking a continuance of approximately forty-five days of the trial setting on January 23, 2012. See Motion at 1. Ganadonegro provides several reasons in support of granting a continuance. First, he notes that he has filed multiple challenges to the charges in the Superseding Indictment and that briefing on one of these motions is not complete, as he has until January 30, 2012 under the local rules to file a reply

to one of the United States' responses to these motions.  See Motion at 2.[1]  He asserts that he is also

"pursuing additional defense investigation in preparation for the re-trial of this matter, including

consulting with audio recording engineers and experts in the Navajo language and culture and

debriefing each of the jurors who participated in the original trial."  Motion at 2-3.  Ganadonegro

states that, "[b]ecause of the need to preserve the confidentiality of the defense investigation in this

case, [he] is prepared to make an ex parte showing of the additional defense investigation which will

be required during the next 45 days."  Motion at 3.  Ganadonegro also notes that one of his

attorneys, Assistant Federal Public Defender Kari Converse, "is not available in the week of January

16, 2012 through January 20, 2012 because of a previously scheduled consulting commitment which

requires Ms. Converse to be in the Republic of Mexico during that period."  Motion at 3.

Ganadonegro contends that the time period under the Speedy Trial Act, 18 U.S.C. §§ 3161-74, has

been tolled based on the filing of his pretrial motions challenging the Superseding Indictment.  See

Motion at 4.  He asserts that the applicable factors in the Speedy Trial Act weigh in favor of

continuance that would allow him to properly present his case in comparison to the interests of the

public and the United States.  See Motion at 4.  Ganadonegro also notes that one of his attorneys,

Assistant Federal Public Defender Brian Pori, has been attending to a variety of complex matters

in other criminal cases while preparing for this trial.  See Motion at 5.

On January 17, 2012, the United States filed the United States' Response to Defendant's

"Third" Motion to Continue Trial.  Doc. 235 ("Response").  The United States argues that the

---

[1]On January 3, 2012, Ganadonegro filed the Defendant's Motion to Dismiss which seeks dismissal of the Superseding Indictment.  See Doc. 228.  On January 11, 2012, the United States filed the United States' Response to Motion to Dismiss [Doc. 228].  See Doc. 233.  Under D.N.M.LR-Cr. 47.8(a): "A reply must be served within fourteen (14) calendar days after service of the response."  D.N.M.LR-Cr. 47.8(a).

district court and the United States are "no less responsible" for "ensuring adherence to the requirements of the Speedy Trial Act" when the defendant has requested a continuance. Response at 5 (emphasis omitted). The United States contends that Ganadonegro has not set forth adequate reasons for continuing the current trial date. See Response at 5. The United States argues that Ganadonegro has already set out his reasoning for the pretrial motions he has filed, and thus no continuance is necessary to address those matters. See Response at 5-6. Regarding the additional investigation Ganadonegro seeks to complete, the United States asserts that he has had adequate time to complete these investigations in light of the lengthy amount of time this case has been pending. See Response at 6. It argues that none of the issues he has raised are novel and that he could have investigated them at an earlier time. See Response at 6. The United States argues that Ganadonegro has not indicated that Ms. Converse will be unavailable the week of the trial or explained why she chose to leave the country the week before trial, considering that the trial has been set for two months now. See Response at 6-7. Additionally, the United States contends that a continuance will be prejudicial to it in light of the number of witnesses with whom it must coordinate, including several out-of-state witnesses. See Response at 7. It notes that several of its witnesses will be unavailable in March. See Response at 7. For example, Dr. Gwendolyn Lattimore, "who lives in Vermont and is integral to the Government's case-in-chief as the child abuse consulting expert, informed the Government that she is pregnant and, due to medical complications, will not be able to travel between March and June 2012." Response at 7. "Dr. Michael Shannon, who lives in Washington, will be out of the country February 3-16, 2012." Response at 7. "Dr. Kathleen Lopez will be out of the state February 20-21, 2012 and again April 16-20-2012. [sic]" Response at 7. "Dr. Elliot Crow will be out of the state March 10-17, 2012." Response at 7. "Dr. Leslie Johnson is tentatively scheduled to be out of the country March 22-April

6, 2012." Response at 7.  The United States also argues that the evidence in the case will become more stale as additional time passes.  See Response at 7.  The United States asserts that, if the Court is inclined to grant a continuance, it would request a continuance to "the week of February 20, 2012 or the week of February 27, 2012."  Response at 7.

At the hearing on January 17, 2012, Mr. Pori stated that he had few other arguments to raise on the motions to dismiss the Superseding Indictment other than those stated in the motions.  See Transcript of Hearing at 3:14-16 (taken January 17, 2012)(Pori)("Tr.").[2]  Ganadonegro noted that Ms. Converse, who was not in the country at the time of the hearing, could better address any arguments regarding the motions to dismiss.  See Tr. at 4:19-5:7 (Pori).  Ganadonegro noted that he had no objection to setting the trial on February 20, 2012 or February 27, 2012.  See Tr. at 6:7-11 (Pori).  Ganadonegro stated, however, that he would prefer a trial setting in March, because one of their witnesses, Dr. Leestma, will not be available until that time.  See Tr. at 6:7-7:15 (Pori).  Ganadonegro asserted that one of the government's experts, Dr. Lattimore, would not likely be available in March, but stated that it was willing to allow her to testify by videoconference or telephonically.  See Tr. at 7:1-8:13 (Pori).  The Court expressed some concern about this expert testifying in this manner based on Ganadonegro's Confrontation Clause rights.  See Tr. at 8:14-17 (Court).  Ganadonegro stated that he would be willing to waive these rights and allow Dr. Lattimore to appear by videoconference or telephonically.  See Tr. at 8:17-21 (Pori)("[C]ertainly with respect to Mr. Ganadonegro's confrontation rights I'm sure he would be willing to waive whatever right he has to confront Dr. Lattimore in person.").  He also contended that her testimony in this manner would not likely violate his Confrontation Clause rights.  See Tr. at 8:21-9:9 (Pori).  He asserted that

---

[2]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

the complexity of the pending motions before the Court, given the short time until trial, would likely justify a continuance.  See Tr. at 13:1-7 (Pori).  He argued that he would not be ready to present his witnesses on January 23, 2012, in part, because he has not yet secured the funding to reimburse all of his experts for their testimony.  See Tr. at 13:8-19 (Pori).

Ganadonegro also asserted that there are some potential exculpatory portions of the audiotaped interview he gave to Federal Bureau of Investigation ("FBI") agents regarding his description of what he did with the alleged child victim.  See Tr. at 13:22-14:23 (Pori).  He stated that he would not be able to fully divulge the nature of the evidence at the hearing without running the risk of revealing too much information to the United States.  See Tr. at 13:22-14:3 (Pori).  Ganadonegro asserted that there are noises on the audiotaped interview from when he demonstrated to the agents how he handled the child which might reveal a great deal of information about the exact motions he made and how he handled the child.  See Tr. at 14:4-23 (Pori).  He noted that he was not fully aware of these aspects of the recording, which he asserts will require audio engineer experts to fully explore, until the issue came up at the previous trial.  See Tr. at 13:22-17:1 (Pori, Court).  He also represented that he originally believed that, before the first trial, the amount of force he used would not be contested.  See Tr. at 15:1-8 (Pori).  Ganadonegro said that some evidence came out at the first trial when the case agent testified which raised some disputes as to the amount of force that was used in light of some information a private investigator received from the case agent.  See Tr. at 15:4-13 (Pori).  Ganadonegro asserted that his cultural expert would testify regarding his inability to fully articulate his thoughts to the FBI agents based on his Navajo background, as Navajos have increased rates of depression and have difficulty discussing death shortly after it occurs.  See Tr. at 15:23-16:19 (Pori).  He contended that these factors dramatically affected his interview with the FBI agents.  See Tr. at 16:12-19 (Pori).  Ganadonegro argues that he

has not had adequate time to discuss the results of the previous trial with several jurors who indicated that they were convinced Ganadonegro was not guilty of the charged crime. See Tr. at 17:4-18:3 (Pori). He indicated that contacting them for more information has been difficult, as some have not been willing to communicate by telephone and will likely require face-to-face interviews. See Tr. at 17:4-18:3 (Pori). Ganadonegro represented that interviewing these jurors regarding whether a particular portion of his case was confusing or unclear would significantly aid him in preparation for trial. See Tr. at 17:18-23 (Pori).

In response, the United States asserted that Ganadonegro may not be able to get the information he seeks from the audiotaped interview he participated in with the FBI agents. See Tr. at 18:19-19:1 (Rozzoni). Regarding the issues related to Ganadonegro's Navajo background, the United States contended that Ganadonegro has had adequate time to address those issues since the trial in September 2011. See Tr. at 19:2-10 (Rozzoni). The United States also argued that Ganadonegro has had several months since September 2011 to interview the jurors. See Tr. at 19:11-15 (Rozzoni). The United States reiterated the difficulty of coordinating a large number of witnesses each time the Court continues the trial date. See Tr. at 19:16-20:6 (Rozzoni). The United States asserted that both the mother of the alleged victim and Ganadonegro desire the closure that the completion of this trial will accomplish. See Tr. at 20:7-12 (Rozzoni). The United States represented that, if the Court sets the trial date for February 20, 2012 or February 27, 2012, Ganadonegro may be able to have Dr. Leestma appear sometime during that period, including by having her testify out of order during the trial. See Tr. at 20:13-18, 22:5-12 (Rozzoni). The United States agreed that the Speedy Trial Act is currently tolled based on Ganadonegro's filing of several pretrial motions that are still pending. See Tr. at 21:10-16 (Rozzoni). The Court expressed some concern that forcing a trial on January 23, 2012 could create problems for the record if the case were

appealed or collaterally attacked.  See Tr. at 21:17-25 (Court).  The United States asserted that it

would prefer having Dr. Lattimore appear in person during trial as opposed to by videoconference

or telephonically.  See Tr. at 22:15-23:5 (Rozzoni).  On the other hand, the United States represented

that it would prefer that she appear by videoconference or telephonically rather than have the Court

continue the trial until sometime in June.  See Tr. at 23:6-11 (Court, Rozzoni).  Ganadonegro also

emphasized the difficult position in which he finds himself in having to try the same case before a

jury when the United States has already heard many of his theories and arguments in support of his

defense.  See Tr. at 24:11-25:19 (Pori, Court).  Ganadonegro asserted that there is a variety of

information available to him to make the exculpatory evidence on the audiotaped interview useful

to him.  See Tr. at 25:20-26:8 (Pori).  Ganadonegro stated that he would be willing to contact Dr.

Leestma to determine if she was available on February 20, 2012 or February 27, 2012, and that he

would be willing to agree to whatever procedure was necessary to accommodate her schedule.  See

Tr. at 26:9-27:6 (Pori).  The United States noted that one of its other expert witnesses would also

be unavailable for a March 12, 2012 trial setting.  See Tr. at 27:20-21 (Rozzoni).

     Following the January 18, 2012 hearing, Brian Pori contacted the Court's courtroom deputy,

K'Aun Wild, by telephone.  In that telephone conversation, Mr. Pori indicated that a February 27,

2012 trial setting would be amenable to Ganadonegro.

## LAW REGARDING THE SPEEDY TRIAL ACT

     "'The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right

to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal

proceedings.'"  United States v. Saltzman, 984 F.2d 1087, 1090 (10th Cir. 1993)(quoting United

States v. Noone, 913 F.2d 20, 28 (1st Cir. 1990)).  The Speedy Trial Act reads in relevant part:

     In any case in which a plea of not guilty is entered, the trial of a defendant

-10-

charged in an information or indictment with the commission of an offense shall
commence within seventy days from the filing date (and making public) of the
information or indictment, or from the date the defendant has appeared before a
judicial officer of the court in which such charge is pending, whichever date last
occurs.  If a defendant consents in writing to be tried before a magistrate judge on
a complaint, the trial shall commence within seventy days from the date of such
consent.

18 U.S.C. § 3161(c)(1).  The Speedy Trial Act requires "that an accused person's trial must begin

within seventy days of his indictment or initial appearance, whichever is later."  United States v.

Cano-Silva, 402 F.3d 1031, 1034 (10th Cir. 2006)(citing 18 U.S.C. § 3161(c)(1)).  In situations

where a mistrial has occurred, the Speedy Trial Act provides: "If the defendant is to be tried again

following a declaration by the trial judge of a mistrial or following an order of such judge for a new

trial, the trial shall commence within seventy days from the date the action occasioning the retrial

becomes final."  18 U.S.C. § 3161(e).

The Speedy Trial Act provides that certain periods of delay are not calculated in computing

the time limits for trial.  18 U.S.C. § 3161(h) states in relevant part:

(h)   The following periods of delay shall be excluded in computing the time
within which an information or an indictment must be filed, or in computing
the time within which the trial of any such offense must commence:

(1)   Any period of delay resulting from other proceedings concerning the
defendant, including but not limited to--

(A)   delay resulting from any proceeding, including any
examinations, to determine the mental competency or
physical capacity of the defendant;

. . . .

(D)   delay resulting from any pretrial motion, from the filing of
the motion through the conclusion of the hearing on, or other
prompt disposition of, such motion;

. . . .

-11-

       (H)     delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

   . . . .

       (4)     Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

   . . . .

       (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h). Courts are instructed to consider specific factors when determining whether

to grant a continuance under section (A) of 18 U.S.C. § 3161(h)(7):

     (B)     The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

         (i)     Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

         (ii)    Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

         (iii)   Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the

-12-

indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv)      Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(B).

The district court must make clear on the record its reasons for granting an ends-of-justice continuance. See United States v. Toombs, 574 F.3d 1262, 1269 (10th Cir. 2009). "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough." United States v. Toombs, 574 F.3d at 1271-72 (citations omitted). See United States v. Hernandez-Mejia, 406 F.App'x 330, 336-37 (10th Cir. 2011)(unpublished)("[T]he record, which includes the oral and written statements of both the district court and the moving party, must contain an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time." (quoting United States v. Toombs, 574 F.3d at 1271-72)).

"If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant." 18 U.S.C. § 3162(a)(2). The defendant has the burden of proof of supporting the motion. See 18 U.S.C. § 3162(a)(2). In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: (i) the seriousness of the offense; (ii) the facts and circumstances of the case which led to the dismissal; and (iii) the

impact of a reprosecution on the administration of this chapter and on the administration of justice.

See 18 U.S.C. § 3162(a)(2).  When assessing this second factor, the facts and circumstances of the

case which led to dismissal, the district court should consider both the conduct of the prosecution

and the defendant in determining who bears primary responsibility for the delay.  See United States

v. Taylor, 487 U.S. 326, 338-40 (1988)(holding that the district court should have taken into account

defendant's failure to appear at the trial rather than just the government's conduct when applying

this second factor); United States v. Nez, No. 11-1526, 2011 WL 5223019, at *4 (D.N.M. Sept. 19,

2011)(Browning, J.).  Failure of the defendant to move for dismissal before trial, or before entry of

a plea of guilty or nolo contendere, shall constitute a waiver of the right to dismissal under this

section.  See 18 U.S.C. § 3162(a)(2).

### RELEVANT LAW REGARDING THE CONFRONTATION CLAUSE

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions,

the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const.

amend. VI.  In Crawford v. Washington, 541 U.S. 36 (2004), the Supreme Court of the United States

held that, consistent with the Sixth Amendment, "[t]estimonial [hearsay] statements of witnesses

absent from trial [are admissible] only where the declarant is unavailable, and only where the

defendant has had a prior opportunity to cross-examine."  541 U.S. at 59.  In Davis v. Washington,

547 U.S. 813 (2006), the Supreme Court further elaborated on what a "testimonial" statement is:

> Statements are nontestimonial when made in the course of police interrogation under
> circumstances objectively indicating that the primary purpose of the interrogation is
> to enable police assistance to meet an ongoing emergency.  They are testimonial
> when the circumstances objectively indicate that there is no such ongoing
> emergency, and that the primary purpose of the interrogation is to establish or prove
> past events potentially relevant to later criminal prosecution.

547 U.S. at 822.  The United States Court of Appeals for the Tenth Circuit has restated this rule in

two ways, although it has not yet expressed which definition it will ultimately prefer.  A testimonial statement is either: (i) "a formal declaration made by the declarant that, when objectively considered, indicates the primary purpose for which the declaration was made was that of establishing or proving some fact potentially relevant to a criminal prosecution," or (ii) "[a] formal statement" made in a situation where "a reasonable person in the position of the declarant would objectively foresee that the primary purpose of the statement was for use in the investigation or prosecution of a crime."  United States v. Smalls, 605 F.3d 765, 778 (10th Cir. 2010).  Accord United States v. Chaco, 801 F.Supp.2d 1200, 1209-10 (D.N.M. 2011)(Browning, J.)(discussing developments in Tenth Circuit precedent on the test regarding what qualities as a testimonial statement).

In Melendez-Diaz v. Massachusetts, 129 S.Ct. 2527 (2009), the Supreme Court addressed whether the admission of a sworn affidavit by a forensic chemist, who testified in the affidavit that the substance which police seized from the defendant was cocaine of a certain amount, violated the Confrontation Clause.  The Supreme Court first found that such affidavits were testimonial, because they were "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," and because, under Massachusetts law, the sole purpose of the affidavit was to provide prima-facie evidence of the content of the substance seized.  129 S.Ct. at 2531-32.  The Supreme Court then used the affidavit introduced by the prosecution to outline its concerns regarding the lack of cross-examination when such affidavits are introduced as evidence:

> The affidavits submitted by the analysts contained only the bare-bones statement that "[t]he substance was found to contain: Cocaine."  At the time of trial, petitioner did not know what tests the analysts performed, whether those tests were routine, and whether interpreting their results required the exercise of judgment or the use of skills that the analysts may not have possessed.  While we still do not know the

> precise tests used by the analysts, we are told that the laboratories use "methodology recommended by the Scientific Working Group for the Analysis of Seized Drugs," At least some of that methodology requires the exercise of judgment and presents a risk of error that might be explored on cross-examination.

129 S.Ct. at 2537. Because there was no opportunity to cross-examine on these issues, the Supreme Court concluded that introduction of the affidavit violated the defendant's rights under the Confrontation Clause.   See 129 S.Ct. at 2542 ("The Sixth Amendment does not permit the prosecution to prove its case via ex parte out-of-court affidavits, and the admission of such evidence against Melendez-Diaz was error.").   The Supreme Court has since extended this holding to "forensic laboratory report[s] containing a testimonial certification -- made for the purpose of proving a particular fact -- through the in-court testimony of a scientist who did not sign the certification or perform or observe the test reported in the certification."   Bullcoming v. New Mexico, 131 S.Ct. 2705, 2710, 2715 (2011)("Accordingly, the analysts who write reports that the prosecution introduces must be made available for confrontation even if they possess 'the scientific acumen of Mme. Curie and the veracity of Mother Teresa.'").

Except in rare cases, the prosecution's use of live or recorded video testimony without the defendant having the ability to confront the witness face-to-face violates a defendant's Confrontation Clause rights -- absent a showing of unavailability and prior opportunity to confront the witness. See United States v. Sandoval, No. 04-2362, 2006 WL 1228953, *7-9 (D.N.M. Mar. 7, 2006)(Browning, J.).   In Maryland v. Craig, 497 U.S. 836 (1990) -- which was decided before Crawford v. Washington -- the Supreme Court rejected a Confrontation Clause challenge to a Maryland statute that allowed a child witness in a child molestation case, under certain circumstances, to testify via a one-way closed circuit television, which did not allow the witness to view the defendant.   See 497 U.S. at 860.   While upholding the constitutionality of a child's

testimony outside the defendant's presence, the Supreme Court in Maryland v. Craig recognized that the "central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." 497 U.S. at 845.[3]

The Supreme Court in Maryland v. Craig recognized that the context of an adversary proceeding before the trier of fact involved "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" that "is the norm of Anglo-American criminal proceedings." 497 U.S. at 846. The Supreme Court in Maryland v. Craig also acknowledged the peculiar power of face-to-face confrontation in that "face-to-face confrontation enhances the accuracy of fact finding by reducing the risk that a witness will wrongfully implicate an innocent person," 497 U.S. at 846 (citing Coy v. Iowa, 487 U.S. 1012, 1019-20 (1988)), and that "face-to-face confrontation forms 'the core of the values furthered by the Confrontation Clause,'" Maryland v. Craig, 497 U.S. at 847 (quoting California v. Green, 399 U.S. 149, 157 (1970)).

The Supreme Court explained that the Confrontation Clause "reflects a preference for face-to-face confrontation at trial," but that the preference "must occasionally give way to considerations of public policy and the necessities of the case." 497 U.S. at 849 (internal quotation marks omitted). The Supreme Court emphasized that the preference for face-to-face confrontation is strong, and that a defendant's Sixth Amendment confrontation right "may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important

---

[3]The Supreme Court has since distanced itself from this holding that the purpose of the Confrontation Clause is to ensure the reliability of evidence. See Crawford v. Washington, 541 U.S. at 61.

-17-

public policy and only where the reliability of the testimony is otherwise assured." 497 U.S. at 850.

While the issue is decidedly less clear, it is unlikely that a violation of a defendant's Confrontation Clause rights occur when he calls one of his own witnesses who is aligned with him by videoconference or telephonically. See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." (emphasis added)). Cf. United States v. Olguin, 643 F.3d 384, 392 (5th Cir. 2011)("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others."). The need for "adversariness" is not present when the witness is aligned with the defendant. Maryland v. Craig, 497 U.S. at 845. The Supreme Court spoke in Crawford v. Washington about the need for the defendant to have "an adequate opportunity to cross-examine" a witness to satisfy the Confrontation Clause, a need which is not present when the witness is aligned with the defendant. See 541 U.S. at 58. The Federal Rules of Evidence, for example, generally do not permit a party to ask leading questions -- a key tool of cross examination -- of a witness aligned with the party calling the witness. See Fed. R. Evid. 611(c).[4] A defendant might also waive a Confrontation Clause challenge by calling his own witness by videoconference or telephonically. See United States v. Lopez-Medina, 596 F.3d 716, 730-734 (10th Cir. 2010)("Prior to Crawford, we held there

---

[4]Rule 611(c) of the Federal Rules of Evidence provides:

(c)     **Leading Questions.** Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

(1)     on cross-examination; and

(2)     when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

Fed. R. Evid. 611(c).

was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue <u>Crawford</u> changed this rule.").

Like many constitutional rights, a defendant may choose to waive his Confrontation Clause rights.  In 1969, the Supreme Court recognized that a defendant may waive his Confrontation Clause rights and that defendants commonly do so when pleading guilty.  <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 270 (1969)("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . . Third, is the right to confront one's accusers."). The Tenth Circuit has recognized that, both before and after the Supreme Court's decision in <u>Crawford v. Washington</u>, a defendant may knowingly waive his Confrontation Clause rights at trial. <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d at 730-734 (recognizing that Confrontation Clause rights may be waived at trial "at least where there is an explicit waiver").  Specifically, the Tenth Circuit stated: "Prior to <u>Crawford</u>, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue <u>Crawford</u> changed this rule."  <u>United States v. Lopez-Medina</u>, 596 F.3d at 731 (citations omitted).  The Tenth Circuit has held in prior cases that a defendant's counsel can stipulate to the admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy."  <u>Hawkins v. Hannigan</u>, 185 F.3d 1146, 1155 (10th Cir. 1995).  The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the prosecution admitting a videotaped deposition of one of its witnesses.  <u>See</u> <u>Earhart v. Konteh</u>, 589 F.3d 337, 344 (6th Cir. 2009).  The Sixth Circuit in that case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in <u>Bailey v. Mitchell</u>, 271 F.3d 652 (6th Cir. 2001), to argue that Earhart waived his right to contest the admission of the videotape deposition.  In <u>Bailey</u>, we held that a criminal defendant waived his right

to confrontation by entering into a quid pro quo agreement with a state prosecutor. Id. at 657. The petitioner in Bailey had agreed to allow the State to admit the videotape deposition if the prosecutor would consent to the defendant's motion for a continuance. Id. Importantly, the Ohio state courts found as a factual matter that Bailey had made an explicit deal with the prosecutor for the admission of the videotape. Id.

Earhart v. Konteh, 589 F.3d at 344. Notably, the Tenth Circuit's case in United States v. Lopez-Medina involved an oral waiver on the record in open court. See 596 F.3d at 731 ("It is clear from this statement [to the judge] that defense counsel intentionally relinquished his (or rather, his client's) confrontation right through his questioning of Johnson.").

## ANALYSIS

Because the Court believes that the ends of justice support granting the continuance, the Court will grant the Motion. The Court will, however, set the trial for February 27, 2012, approximately thirty-five days from the current trial date. The Court believes that trial date will appropriately balance Ganadonegro's interests, the United States' interests, the public's interests, and the ends of justice.

## I.   THE SPEEDY TRIAL ACT HAS BEEN TOLLED DURING THE PERIODS THE COURT HAS PREVIOUSLY CONTINUED THE TRIAL SETTING AND DURING THE TIME GANADONEGRO'S PRETRIAL MOTIONS HAVE BEEN PENDING.

The Speedy Trial Act provides that certain periods of delay are not calculated in computing the time limits for trial. 18 U.S.C. § 3161(h) states in relevant part:

(h)    The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1)    Any period of delay resulting from other proceedings concerning the defendant, including but not limited to--

(A)    delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant;

. . . .

 (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

. . . .

 (H) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court.

. . . .

(4) Any period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial.

. . . .

(7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h).  The time periods in this statute are measured by calendar days.  See United States. v. Thompson, 524 F.3d 1126, 1130 (10th Cir. 2008)(calculating the periods specified in the Speedy Trial Act according to calendar days); United States v. Mastrangelo, 733 F.2d 793, 797 (11th Cir. 1984)("We therefore hold that the thirty-day limitation established by 18 U.S.C. § 3161(c)(2) [regarding the minimum time that must pass before a court conducts a trial] is measured simply in calendar days and not by application of the excludable time provisions of section 3161(h).").

The original trial in this case that resulted in a mistrial concluded on September 12, 2011. See Clerk's Minutes at 1. A seventy-day period began running following the mistrial. See 18 U.S.C. § 3161(e). The Court set a new trial for November 14, 2011. See Doc. 191. When the Court granted the motion seeking continuance of the trial for two weeks until November 28, 2011 pursuant to 18 U.S.C. § 3161(h)(7)(A), that two week period was excludable from the seventy-day period. See Doc. 200. 18 U.S.C. § 3161(h)(7)(A) excludes from the seventy-day period delays resulting from continuances granted pursuant to the ends of justice. See 18 U.S.C. § 3161(h)(7)(A). When the Court granted another motion seeking continuance of the trial following the filing of the Superseding Indictment, the period from that date until the trial setting on January 23, 2012 was excludable under 18 U.S.C. § 3161(h)(7)(A). See Doc. 208. 18 U.S.C. § 3161(h)(7)(A) excludes from the seventy-day period delays resulting from continuances granted pursuant to the ends of justice. See 18 U.S.C. § 3161(h)(7)(A). The Speedy Trial Act clock has also been tolled under 18 U.S.C. § 3161(h)(1)(D) from the time Ganadonegro filed his Motion to Dismiss Count 3 on December 6, 2011. See Doc. 218. Some of this excludable period based on the pending pretrial motions overlaps with the excludable period resulting from the continuance granted for the ends of justice that continued the trial to January 23, 2012. Because just over sixty days have passed since the completion of the previous trial and because the Court will not likely resolve the three pending pretrial motions until shortly before a trial date on February 27, 2012, the seventy-day Speedy Trial Act clock will likely be tolled under 18 U.S.C. § 3161(h)(1)(D) until shortly before this trial date. Thus, it is not necessary to grant a continuance for the ends of justice under 18 U.S.C. § 3161(h)(7)(A) based on the tolling of the Speedy Trial Act clock pending the resolution of the three pretrial motions Ganadonegro has filed.

II.     **THE BEST INTERESTS OF THE PUBLIC AND OF GANADONEGRO AND THE
        ENDS OF JUSTICE WEIGH IN FAVOR OF GRANTING A CONTINUANCE.**

Failing to grant a continuance would likely result in a miscarriage of justice.  This case was
previously the subject of a two-week trial, which required testimony from many expert and lay
witnesses, and involved a variety of complicated and technical evidence.  The jury's inability to
reach a verdict following several hours of deliberation and their subsequent interviews with the
attorneys indicate that the jurors largely agreed that Ganadonegro -- not some illness -- caused
Q.S.'s death, but that they could not agree that he had the necessary mens rea to commit the offense
of first degree murder under 18 U.S.C. §§ 1153, 1111(a) and (c)(3).  The attorneys' conversations
with the jurors following their deliberations indicated that they had significant disagreement whether
Ganadonegro had the required mens rea -- knowingly and willingly committing child abuse -- to be
convicted of the charged offense.  See Court's Final Jury Instructions (Given) at 14, filed September
12, 2011 (Doc. 188).  Based on those discussions with the jurors and the mistrial, the United States
decided on November 9, 2011 to file a Superseding Indictment that charged additional counts
against Ganadonegro.  Beyond the usual issues involved in a subsequent trial that follows a hung
jury, those new Counts may make the upcoming trial significantly different trial than the prior one.
For these reasons and because of some other circumstances in the case, the Court believes that a
continuance of the trial set for January 23, 2012, is proper under the factors listed in 18 U.S.C. §
3161(h)(7)(B).

In the context of 18 U.S.C. § 3161(h)(7)(B)(i), failing to grant a continuance would result
in a miscarriage of justice.  While Ganadonegro has had some time to address the issues that the
Superseding Indictment and mistrial raise, there are some complicated evidentiary matters in the
case.  First, there are some issues related to the audiotaped interview Ganadonegro gave to FBI

agents.  Ganadonegro has represented that he will require the assistance of an audio engineer to interpret some noises on the audiotape that may reveal information about how hard Ganadonegro indicated he shook the child.  Second, this is a case that requires a great deal of complex medical evidence.  Those medical issues will require expert testimony to properly present the issues to the jury.  At the previous trial, many witnesses with medical training, who were either directly involved in treating the child or who provided their expert opinion on the cause of her death and whether she had any latent medical conditions that would have led to her death, testified before the jury.  While the attorneys have tried this case once before, there will likely be a great deal of different evidence in this upcoming trial.  The evidence presented at the previous trial was complex.  Presenting that evidence again in an effective manner will require significant preparation by the attorneys and lengthy consultation with the witnesses to effectively present the case.  One of Ganadonegro's attorneys has been out of the country for some period of time shortly before the current trial date. Notably, she was the attorney who prepared some of the more complicated pretrial motions Ganadonegro has filed regarding dismissal of certain counts in the Superseding Indictment.  She was not able to attend the hearing on January 17, 2012 to argue in favor of those motions. Ganadonegro's reply to the United States' response to the Defendant's Motion to Dismiss is not due until January 25, 2012.  Given the division of the jury following the mistrial, Ganadonegro has a viable chance of securing acquittal on at least some counts.  Likewise, the United States has a viable chance of securing conviction given the additional counts it has now asserted against Ganadonegro. The complexity of the evidence and issues in this case are such that forcing a trial upon Ganadonegro in a way that prevents him from adequately preparing his case could result in a miscarriage of justice.  Additionally, the Court has not yet had a chance to address some of Ganadonegro's pretrial motions.  The Court believes that Ms. Converse's absence from the country

-24-

limits Ganadonegro's ability to effectively argues his motions to dismiss and limits the Court's ability to decide those motions.  Given that the circumstances have effectively boxed in the Court, the Court does not believe it has much choice but to continue the trial on January 23, 2012.  The Court recognizes the United States' and the public's concern of speedily bringing this case to a resolution.  Some of the additional issues in the upcoming trial resulted from the United States filing a Superseding Indictment.  Additionally, a relatively short continuance of approximately thirty-five days from January 23, 2012 to February 27, 2012 will not likely result in any significant deterioration of witnesses' memory or prolonged anxiety to the alleged victim's mother.

In the context of 18 U.S.C. § 3161(h)(7)(B)(ii), it is not reasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by the Speedy Trial Act.  This case is more complex than many criminal cases that appear before the Court, in part because of the complexity of the evidence and the number of experts who will testify.  The nature of the prosecution of the case, specifically the recent filing of the Superseding Indictment, makes the case more difficult to defend for Ganadonegro.  The trial itself raises some complex factual issues.  Likewise, the motions to dismiss Ganadonegro has filed raise some complex legal issues regarding whether some of the crimes the United States has charged were properly assimilated under federal law, whether any of the charges violate the Double Jeopardy Clause, and whether the Superseding Indictment is multiplicitous.  See Doc. 218; Doc. 228.  Ms. Converse should have a full opportunity to argue these issues.

In light of these considerations, the Court believes that continuing this case until February 27, 2012 is appropriate.  Although it is difficult to coordinate the witnesses' schedules to allow them to all testify at the trial, the Court will grant the continuance on this occasion.  Dr. Leestma, one of Ganadonegro's experts, could not make herself available until March 2012.  It appears that based

on Brian Pori's communication with Ms. Wild, however, that a February 27, 2012 setting would accommodate her schedule.  A trial setting of February 27, 2012 is ideal, because the United States has a larger number of problems with its expert witnesses' schedules on the dates that follow the week of February 27, 2012.  For example, Dr. Lattimore, "who lives in Vermont and is integral to the Government's case-in-chief as the child abuse consulting expert, informed the Government that she is pregnant and, due to medical complications, will not be able to travel between March and June 2012."  Response at 7.  "Dr. Michael Shannon, who lives in Washington, will be out of the country February 3-16, 2012."  Response at 7.  "Dr. Kathleen Lopez will be out of the state February 20-21, 2012 and again April 16-20-2012. [sic]"  Response at 7.  "Dr. Elliot Crow will be out of the state March 10-17, 2012."  Response at 7.  "Dr. Leslie Johnson is tentatively scheduled to be out of the country March 22-April 6, 2012."  Response at 7.  Not granting the continuance would frustrate some of the goals of the criminal justice system.  While the purposes underlying the Speedy Trial Act, such as promoting a speedy disposition of the case for the sake of the public and the ends of justice, are important, it is also important that Ganadonegro complete his preparation for trial and that the Court have adequate time to rule on the pending motions.

After weighing the best interests of the public and of Ganadonegro with the ends of justice, the Court finds that granting a continuance will strike a proper balance between the ends of justice and the best interests of the public and of Ganadonegro based on the reasons Ganadonegro has stated in his Motion requesting a continuance and at the hearing.  Specifically, the need for Ganadonegro to have time to properly present this complex case to the jury, the need for the Court to address the pending pretrial motions, and the complications arising out of the mistrial that Ganadonegro must address outweigh the public's interest in a speedy trial.  See 18 U.S.C. § 3161(h)(7).  The Court is not convinced, however, on the record before it that it should continue the trial for forty-five days.

The Court believes that a continuance of approximately thirty-five days is sufficient without being greater than necessary to address the grounds for continuance Ganadonegro has raised. Finally, with Ganadonegro's reply to the United States' response to his second motion to dismiss not due until January 25, 2012, the Court will set a hearing on these pending motions for February 2, 2012. See Minute Order (Doc. 237). With Ms. Converse back from Mexico and all other counsel indicating that they are available for that date, the Court should have plenty of time to rule on these motions.

## III.      THE COURT WILL RESET THE TRIAL DATE ON FEBRUARY 27, 2012.

The United States said in its Response that, if the Court were to grant a continuance, it would request a continuance to "the week of February 20, 2012 or the week of February 27, 2012." Response at 7. It made this representation based on the availability of its witnesses and a desire for the earliest trial setting possible to avoid further deterioration of the witnesses' memories and to prevent a delay of justice. See Response at 7. Regarding its witnesses, the United States noted that Dr. Lattimore, "who lives in Vermont and is integral to the Government's case-in-chief as the child abuse consulting expert, informed the Government that she is pregnant and, due to medical complications, will not be able to travel between March and June 2012." Response at 7. "Dr. Michael Shannon, who lives in Washington, will be out of the country February 3-16, 2012." Response at 7. "Dr. Kathleen Lopez will be out of the state February 20-21, 2012 and again April 16-20-2012. [sic]" Response at 7. "Dr. Elliot Crow will be out of the state March 10-17, 2012." Response at 7. "Dr. Leslie Johnson is tentatively scheduled to be out of the country March 22-April 6, 2012." Response at 7. Originally, Ganadonegro represented, in one of his prior motions for continuance, that Dr. Leestma would be unavailable until March 2012. See Unopposed Ninth Motion to Continue Trial at 4. Following the hearing on January 17, 2012, Mr. Pori, one of Ganadonegro's attorneys, contacted the Court's courtroom deputy, Ms. Wild by telephone. In that

telephone conversation, Mr. Pori indicated that a February 27, 2012 trial setting would be amenable to Ganadonegro.  Given the discussion at the hearing and Mr. Pori's conversation with Ms. Wild, the Court presumes that Dr. Leestma will be available to testify at some point during the trial if the trial begins on February 27, 2012.  Based on the length of the previous trial, the upcoming trial will last for approximately two weeks and run into March.  See Clerk's Minutes at 1.  The United States represented in its Response that Dr. Lattimore and all its "essential" witnesses would be available on either February 20, 2012 or February 27, 2012.  Response at 7-8.

Given that February 27, 2012 is one of the only dates where all of the witnesses are available, the Court concludes that continuing the trial until that date is appropriate.  This date provides Ganadonegro with sufficient time to develop his case for trial without resulting in unnecessary delay.  While the reasons Ganadonegro has offered to continue the trial might not, in isolation, justify moving the trial, the Court believes that those reasons, taken together, support a continuance to February 27, 2012.  Given Dr. Lattimore's likely unavailability until June, it is also the latest date for trial the Court could set without having to set the trial for a date sometime in June 2012 -- the next likely time where all the witnesses will be available.

**IV.     IF ANY OF THE WITNESSES WILL NOT TESTIFY AT TRIAL, GANADONEGRO MUST FILE A WRITTEN WAIVER OF HIS CONFRONTATION RIGHTS REGARDING THOSE WITNESSES.**

At the hearing, Ganadonegro indicated that he would waive his Confrontation Clause rights if one of the United States' expert witnesses, Dr. Lattimore, needed to testify by videoconference or telephonically at the upcoming trial.  The United States has represented that Dr. Lattimore would be available on February 27, 2012.  Based on that representation, the United States should take all appropriate steps to ensure her attendance at the trial.  Absent her unavailability and a prior

opportunity to cross examine her,[5] Ganadonegro could successfully assert a Confrontation Clause challenge against her testimony by videoconference or telephonically.  The Supreme Court in Maryland v. Craig recognized that the context of an adversary proceeding before the trier of fact involved "[t]he combined effect of these elements of confrontation -- physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" that "is the norm of Anglo-American criminal proceedings."  497 U.S. at 846.  Face-to-face confrontation with a witness who is present in the courtroom is normally required by the Confrontation Clause.  See Maryland v. Craig, 497 U.S. at 846-48.  Unlike the situation in Maryland v. Craig, which dealt with protecting abused children from further trauma by allowing them to testify by closed-circuit video in child molestation cases, there is no comparable "important public policy" to protect in this case with Dr. Lattimore.  497 U.S. at 849-50.  Dr. Lattimore is pregnant, and forcing her to travel during some portions of her pregnancy could cause complications.  Given, however, that a term of pregnancy comes to a discrete end after a relatively short period of time, those difficulties are not as compelling as protecting minor victims from sex crimes, a problem that can last for a much longer period of time until the minor reaches a more mature age.  See Maryland v. Craig, 487 U.S. at 682-84.

While the issue is not clear under federal case law, it is not likely that Ganadonegro calling one of his own witnesses by videoconference or telephonically would raise the same concerns.  See U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to . . . be

---

[5]While Ganadonegro likely had a prior opportunity to cross examine Dr. Lattimore within the meaning of that phrase based on his cross examination of her at the prior trial, the Court cannot conclude whether she would be unavailable for Confrontation Clause purposes without more specific facts about Dr. Lattimore's medical condition on the specific date where she would testify by videoconference or telephonically.  Without more information, the Court assumes that the United States could not meet the showing for unavailability.  See United States v. Christy, No. 10-1534, 2011 WL 5223039, at *5 (D.N.M. Sept. 21, 2011)(Browning, J.)(discussing unavailability requirement).

confronted <u>with the witnesses against him</u> . . . ." (emphasis added)).  <u>Cf</u>. <u>United States v. Olguin</u>, 643 F.3d at 392 ("The Sixth Amendment guarantees the right to confrontation against a party testifying against him, not against others.").[6]  He might also waive a Confrontation Clause challenge by choosing to call his own witness by videoconference or telephonically.  <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d at 730-734 ("Prior to <u>Crawford</u>, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue <u>Crawford</u> changed this rule.").

If either party determines that it must call a witness by videoconference or telephonically, the Court will require Ganadonegro to execute a written waiver of his Confrontation Clause rights to be filed with the Court should he wish to proceed to trial and allow the witness to testify.  The waiver must be signed by Ganadonegro and his counsel as well as the counsel for the United States. In 1969, the Supreme Court recognized that a defendant may waive his Confrontation Clause rights and that defendants commonly do so when pleading guilty.  <u>See</u> <u>Boykin v. Alabama</u>, 395 U.S. at 270 ("Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. . . . Third, is the right to confront one's accusers.").  The Tenth Circuit has recognized that, both before and after the Supreme Court's decision in <u>Crawford v. Washington</u>, a defendant may knowingly waive his Confrontation Clause rights at trial.  <u>See</u> <u>United States v. Lopez-Medina</u>, 596 F.3d at 730-734 (recognizing that Confrontation Clause rights may be waived at trial "at least where there is an explicit waiver").  Specifically, the Tenth Circuit stated:

---

[6]The Tenth Circuit has held that a witness testifying by telephone did not violate the Confrontation Clause when the witness "took an oath, was subject to cross-examination, and critically, her testimony (the digits of her social security number) was uncontroverted and subject to a finding of 'absolute proof' by the district court."  <u>United States v. Schuler</u>, 458 F.3d 1148, 1153 (10th Cir. 2006).

"Prior to <u>Crawford</u>, we held there was 'no doubt' a defendant could waive his rights under the Confrontation Clause.  The parties do not argue <u>Crawford</u> changed this rule." <u>United States v. Lopez-Medina</u>, 596 F.3d at 731 (citations omitted).  The Tenth Circuit has held in prior cases that a defendant's counsel can stipulate to the admissibility of evidence that would otherwise violate the Confrontation Clause if doing so "was a matter of prudent trial strategy." <u>Hawkins v. Hannigan</u>, 185 F.3d at 1155.  The United States Court of Appeals for the Sixth Circuit has recognized that such a waiver can be permissible in the context of the prosecution admitting a videotaped deposition of one of its witnesses. <u>See</u> <u>Earhart v. Konteh</u>, 589 F.3d at 344.  The Sixth Circuit in that case relied on one of its prior decisions where it had permitted such a waiver:

> The State relies upon our holding in <u>Bailey v. Mitchell</u>, 271 F.3d 652 (6th Cir. 2001), to argue that Earhart waived his right to contest the admission of the videotape deposition.  In <u>Bailey</u>, we held that a criminal defendant waived his right to confrontation by entering into a <u>quid</u> <u>pro</u> <u>quo</u> agreement with a state prosecutor. <u>Id</u>. at 657.  The petitioner in <u>Bailey</u> had agreed to allow the State to admit the videotape deposition if the prosecutor would consent to the defendant's motion for a continuance.  <u>Id</u>.  Importantly, the Ohio state courts found as a factual matter that Bailey had made an explicit deal with the prosecutor for the admission of the videotape.  <u>Id</u>.

<u>Earhart v. Konteh</u>, 589 F.3d at 344.  Importantly, the Tenth Circuit's case in <u>United States v. Lopez-Medina</u> involved an oral waiver on the record in open court. <u>See</u> 596 F.3d at 731 ("It is clear from this statement [to the judge] that defense counsel intentionally relinquished his (or rather, his client's) confrontation right through his questioning of Johnson.").  In this case, Ganadonegro's counsel stated on the record that Ganadonegro would be willing to waive his right to confront Dr. Lattimore and permit her to testify by videoconference or telephonically, in exchange for a continuance. <u>See</u> Tr. at 8:17-21 (Pori).  The Court concludes that this oral waiver would likely be sufficient.  In an abundance of caution, however, the Court will require Ganadonegro to execute a written waiver of his Confrontation Clause rights to be filed with the Court if he decides to permit

a witness to testify by videoconference or telephonically.  The waiver must be signed by Ganadonegro and his counsel as well as counsel for the United States.  Since Ganadonegro is seeking the continuance and suggested waiving his Confrontation Clause rights, it is not unfair to require him to execute a written waiver if he wants the continuance and is willing to have a witness, including his own, testify by videoconference or telephonically.  In comparison, if the United States desired to have Dr. Lattimore testify in person, the next time she would likely be available would not be until June 2012.

     **IT IS ORDERED** that the Defendant's Motion to Continue Trial, filed January 17, 2012 (Doc. 234), is granted.  The Court will continue the current trial setting to February 27, 2012.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
Jeremy Pena
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

    *Attorneys for the Plaintiff*

Kari Converse
Brian A. Pori
  Assistant Federal Public Defenders
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Defendant*