# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                       No. CR 09-0312 JB

KALVEST GANADONEGRO,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss Count 3, filed December 6, 2011 (Doc. 218)("Motion"). The Court held a hearing on February 2, 2012. The primary issues are: (i) the Court should dismiss Count 3 in the Superseding Indictment, filed November 9, 2011 (Doc. 201), on the basis that the charged New Mexico state offense is not properly assimilated into federal law under the Assimilative Crimes Act ("ACA"), 18 U.S.C. § 13; and (ii) whether the Court should dismiss Count 3 in the Superseding Indictment on the basis that the Count 3 is multiplicitous of the other Counts in the Superseding Indictment. The Court will deny the Motion. Plaintiff United States of America does not need to rely on the ACA to prosecute the New Mexico state offense charged in Count 3, because the Indian Major Crimes Act ("IMCA"), 18 U.S.C. § 1153, permits the United States to prosecute that offense. Because Count 1 and Count 3 as well as Count 2 and Count 3 each require proof of a fact which the other does not to establish that an offense occurred, the Court concludes that neither Count 1 nor Count 2 is multiplicitous of Count 3.

## PROCEDURAL BACKGROUND

Ganadonegro went to trial on charges of intentional child abuse, charged as first-degree

murder, on September 1, 2011.  See Clerk's Minutes, filed September 1, 2011 (Doc. 192).  The jury

hung, and the Court declared a mistrial.  See Jury Notes at 2-4, filed September 13, 2011 (Doc. 194).

On October 9, 2011, the United States superseded the indictment with a new one, charging three

separate charges: (i) second-degree murder in violation of 18 U.S.C. § 1111; (ii) voluntary

manslaughter in violation of 18 U.S.C. § 1112; and (iii) negligent child abuse resulting in death in

violation of N.M.S.A. 1978, § 30-6-1(D)(1) and 18 U.S.C. §§ 13 and 1153.  See Superseding

Indictment at 1-2.

    Ganadonegro filed his Motion on December 6, 2011.  Ganadonegro argues that the United

States cannot use the ACA to assimilate a violation of N.M.S.A. 1978, § 30-6-1(D)(1).  See Motion

at 2.  He argues that "federal law covers all forms of homicide on federal enclaves and leaves no gap

for any state-law homicide crimes."  Motion at 2.  He argues that the federal statutes currently in

effect, particularly the homicide statutes, are such that they cover a violation of this New Mexico

statute.  See Motion at 2-4.  He argues that 18 U.S.C. § 1111 "specifically cover[s] homicides caused

by child abuse."  Motion at 4.  With respect to his multiplicity argument, Ganadonegro asserts that,

"[b]ecause state child abuse count [sic] covers the same conduct as Count 1 (the second-degree

murder charge) and Count 2 (the voluntary manslaughter charge), allowing a state child abuse

charge to go to the jury would unfairly prejudice Mr. Ganadonegro."  Motion at 5.  He argues that

presenting these multiplicitous Counts to a jury will "exaggerate[] the jury's impression of the

nature and scope of defendant's alleged criminal activity by charging -- and requiring a separate

finding of guilty -- 'an offense multiple times, in separate counts, when, in law and fact, only one

crime has been committed.'"  Motion at 6.  He asserts that presenting "unnecessary counts to the

jury also undermines the reliability of the trial process" by "increas[ing] the risk that the jury will

be diverted from careful analysis of the conduct at issue," and by compromising "verdicts or

assumptions that, with so many charges pending the defendant must be guilty on at least some of them."  Motion at 6.  Ganadonegro argues that, "[i]n this case, the danger is especially aggravated with the confusing and overlapping <u>mens rea</u> requirements" that these different Counts present. Motion at 6-7.

The United States filed its Response on December 20, 2011.  <u>See</u> United States' Response to Motion to Dismiss Count 3 (Doc. 225)("Response").  In its Response, the United States asserts that Ganadonegro "focuses on the" ACA, and fails to address that the IMCA "is a separate and distinct statute that specifically assimilates state felony child abuse and neglect charges into federal law."  Response at 2.  It contends that N.M.S.A. 1978, § 30-6-1(D)(1) criminalizes felony child abuse or neglect, and thus is properly within the IMCA's scope.  <u>See</u> Response at 3.  It argues that the IMCA specifically "gives the federal government jurisdiction to prosecute Indians who commit certain enumerated crimes within Indian Country," including felony child abuse or neglect. Response at 2-4.  The United States asserts that the only definition of felony child abuse under federal law is narrow, because it applies only to the felony murder offenses under 18 U.S.C. § 1111 and has no application outside that context.  <u>See</u> Response at 4-5.  The United States contends that the ACA has no impact on the IMCA, as the two statutes are separate enactments and do not overlap.  <u>See</u> Response at 6.  The United States argues that the charged offenses in the Superseding Indictment are not multiplicitous, as they each contain elements distinct from the others.  <u>See</u> Response at 7.  The United States contends that no violation of the Double Jeopardy Clause in the Fifth Amendment to the United States Constitution arises from these offenses under the applicable test from <u>Blockburger v. United States</u>, 284 U.S. 299 (1932).  <u>See</u> Response at 7-8.  It contends that, under this test, each of the statutes on which it relies to charge offenses requires proof of an additional fact that the other does not.  <u>See</u> Response at 7-8.  It also asserts that the Double Jeopardy

Clause does not prohibit the prosecution from proceeding on several charges against a defendant, including lesser included offenses.  See Response at 9.  It asserts that the proper procedural solution if the jury convicts Ganadonegro on inconsistent legal theories is for the Court to vacate one of those convictions.  See Response at 9.

On January 4, 2012, Ganadonegro filed his Reply to Government's Response to Motion to Dismiss Count 3.  See Doc. 230 ("Reply").  He contends that the IMCA does not apply, because child abuse is already an offense that federal law defines and punishes.  See Reply at 1. Ganadonegro contends that he "is not just charged with child abuse," because "he is charged with child abuse resulting in death."  Reply at 1.  He argues that, while federal law does not cover some child abuse offenses, such as child abuse offenses that do not result in death, federal law covers those offenses that result in death.  See Reply at 2-3.

At the hearing on February 2, 2012, Ganadonegro emphasized that a jury may be confused when it is dealing with multiple crimes that require different mens rea.  See Transcript of Hearing at 4:1-15 (taken February 2, 2012)(Converse)("Tr.").[1]  The Court questioned whether the jury would have significant difficulty sorting out these issues given that juries commonly deal with multiple counts.  See Tr. at 4:16-20 (Court).  Ganadonegro emphasized that Count 3, which incorporates state child abuse requirements, will particularly confuse the jury.  See Tr. at 4:21-5:5 (Converse). Ganadonegro argued that the effect of the current charges proceeding to the jury will be that the jury will believe Ganadonegro is a triple murderer.  See Tr. at 45:2-13 (Pori).  He asserted that it is improper for the United States to proceed on all the theories contained in the Superseding Indictment and that they should have to elect a particular theory on which they will proceed.  See Tr. at 45:21-

---

[1]The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

46:17 (Pori).

Ganadonegro argued that the Adam Walsh Child Protection and Safety Act of 2006, Pub.L. No. 109-248, 120 Stat. 587 (2006), provides a federally defined offense for child abuse resulting in death. See Tr. at 5:6-22 (Converse). He asserted that there is no gap in the federal statutory scheme that permits the United States to prosecute a state child abuse statute when the offense results in death. See Tr. at 6:2-24 (Converse). The Court inquired whether the state statute at issue was the same as the comparable federal murder statutes, because the state statute allows for a conviction when the offense is committed with criminal negligence. See Tr. at 7:1-15 (Court). He argued that the Court should assess not whether the elements of the state and federal offense are identical but rather whether federal law covers the criminal conduct. See Tr. at 8:21-9:4 (Converse).

The United States emphasized that the ACA and the IMCA are separate statutory schemes. See Tr. at 9:11-24 (Pena). The United States represented that it is not arguing that the ACA incorporates a violation of N.M.S.A. 1978, § 30-6-1(D)(1). See Tr. at 9:11-24 (Pena). The United States contended that the ACA contains language which does not appear in the IMCA, and that this ACA language requires a broader inquiry into whether the act or omission at issue is punishable by any act of Congress. See Tr. at 9:25-10:5 (Pena). The United States asserted that, in comparison, the IMCA permits prosecution of an offense under state law when the offense is not defined and punished by federal law. See Tr. at 10:6-13 (Pena). The United States argued that it is improper in the context of the IMCA to inquire into the underlying conduct at issue to see if that conduct could be prosecuted under federal law. See Tr. at 14:11-20 (Pena). The United States emphasized that it is charging Ganadonegro with a New Mexico state offense that involves criminal negligence. See Tr. at 15:3-15 (Pena). It argued that there is no similarly defined offense under federal law, whether one looks at the crime as a felony child abuse offense or negligent child abuse resulting in death.

See Tr. at 15:16-22 (Pena).  Ganadonegro countered that the United States cannot secure a conviction for negligent behavior.  See Tr. at 16:1-7 (Converse).  He contended that the United States can rely on the federal involuntary manslaughter statute if it seeks to charge a crime with a lower degree of criminal culpability.  See Tr. at 16:8-12 (Converse).  The United States noted that Congress amended the IMCA several years ago to enumerate felony child abuse as a punishable offense that the United States may prosecute under that statute.  See Tr. at 18:13-23 (Converse).

## LAW REGARDING THE ASSIMILATIVE CRIMES ACT

The ACA assimilates state law for crimes committed within federal territorial jurisdiction:

> Whoever [in an area under federal jurisdiction] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  "The ACA's basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves."  Lewis v. United States, 523 U.S. 155, 160 (1998).  "[T]he ACA's language and its gap-filling purpose taken together indicate that a court must first ask the question that the ACA's language requires: Is the defendant's 'act or omission . . . made punishable by any enactment of Congress.'"  Lewis v. United States, 523 U.S. at 164 (quoting 18 U.S.C. § 13(a)).  The Supreme Court has further clarified: "If the answer to this question is 'no,' that will normally end the matter.  The ACA presumably would assimilate the statute."  Lewis v. United States, 523 U.S. at 164.  On the other hand:

> If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

Lewis v. United States, 523 U.S. at 164 (citations omitted).  "[T]he Act will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior -- where, for example, differences among elements of the crimes reflect jurisdictional, or other technical, considerations, or where differences amount only to those of name, definitional language, or punishment."  Lewis v. United States, 523 U.S. at 165.

## LAW REGARDING THE INDIAN MAJOR CRIMES ACT

The IMCA "authorizes the prosecution in federal court of an Indian charged with the commission on an Indian reservation of certain specifically enumerated offenses."  Keeble v. United States, 412 U.S. 205, 205-06 (1973).  18 U.S.C. § 1153 provides:

(a)     Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

(b)     Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153.  Under the Indian Major Crimes Act, "[t]he government may use state law only when federal law does not define and punish the Major Crimes Act offense."  United States v. Other Medicine, 596 F.3d 677, 681 (9th Cir. 2010).  Nevertheless, prosecutors are not required "to charge a crime defined and punished by federal law when a defendant's conduct fits such a crime," when "the defendant's conduct also fits a separate Major Crimes Act crime defined and punished by state

law." United States v. Other Medicine, 596 F.3d at 682.  This result arises based on the statute's

defined and punished language and because a defendant's underlying conduct may, in a given case,

result in commission of a variety of different criminal offenses.  See 18 U.S.C. § 1153(b); Negonsott

v. Samuels, 507 U.S. 99, 104 (1993)("[C]onduct resulting in [a] conviction for aggravated battery

is punishable as at least two offenses listed in the Indian Major Crimes Act . . . ."); United States v.

Other Medicine, 596 F.3d at 682 ("An 'offense' is the legally defined crime, not the underlying

criminal conduct.").  For federal law to define an offense under the IMCA, "[t]he law used to define

an offense . . . must contain all descriptors Congress used to label the crime."  United States v.

Other Medicine, 596 F.3d at 681.  For example, federal burglary statutes that punish certain burglary

offenses, including burglary of a post office, a railway or steamboat post office, or burglaries

involving controlled substances, do not preclude the use of state burglary statutes under the IMCA

when the charged conduct involves burglary of a residence.  See United States v. Bear, 932 F.2d

1279, 1281 (9th Cir. 1990), superseded by statute on other grounds, Sentencing Reform Act, 18

U.S.C. § 3551(a).

The Indian Major Crimes Act "originally allowed for prosecution of seven offenses." United

States v. Other Medicine, 596 F.3d at 680.   "Congress has added other crimes over time, and in

2006[2] it added a fifteenth: 'felony child abuse or neglect.'"  United States v. Other Medicine, 596

F.3d at 680 (quoting 18 U.S.C. § 1153(a); Adam Walsh Child Protection and Safety Act of 2006,

Pub.L. No. 109-248, § 215, 120 Stat. 587, 617 (2006)).  "The addition of this particular crime was

originally proposed in the Indian Child Protection and Family Violence Prevention Amendments

---

[2]No ex post facto issues arise from this amendment under the facts of this case, as the United States alleges that Ganadonegro committed the charged offenses in November 2008.   See Superseding Indictment at 1-2.

of 2006 'to close the gap that exists in addressing the full range of crimes that may be inflicted on

children.'" United States v. Other Medicine, 596 F.3d at 680 (quoting S. Rep. 109-255, at 5 (2006)).

As the United States Court of Appeals for the Ninth Circuit has explained, the ability of federal

prosecutors to prosecute offenses committed against children has changed significantly following

this 2006 amendment:

> Before the addition of felony child abuse or neglect, the Major Crimes Act
> did provide jurisdiction to prosecute "assault against an individual who has not
> attained the age of 16 years." Because assault on a minor is defined and punished
> by a federal misdemeanor provision, however, federal prosecutors could pursue child
> abuse cases on reservations only as misdemeanors. The addition of felony child
> abuse or neglect allows prosecutors to reach more serious cases of child abuse, as
> well as severe neglect or sexual abuse not constituting assault.

United States v. Other Medicine, 596 F.3d at 680-81.

### LAW ON DOUBLE JEOPARDY AND MULTIPLICITOUS COUNTS

The guarantees in the Fifth Amendment provide that no person shall "be subject for the same

offense to be twice put in jeopardy of life or limb," U.S. Const. amend. V. The Fifth Amendment

protects individuals not only from "successive prosecutions, but also [from] successive punishments

for the same offense." See United States v. Morris, 247 F.3d 1080, 1083 (10th Cir. 2001)(citing

United States v. Dixon, 509 U.S. 688, 696 (1993)). Accordingly, the United States Court of Appeals

for the Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double

Jeopardy Clause." United States v. McCullough, 457 F.3d 1150, 1162 (10th Cir. 2006)(internal

quotation marks omitted). "Multiplicity refers to multiple counts of an indictment which cover the

same criminal behavior." United States v. McCullough, 457 F.3d at 1162 (quoting United States

v. Johnson, 130 F.3d 1420, 1424 (10th Cir. 1997)). "Although multiplicity is not fatal to an

indictment, multiplicitous counts which may result in multiplicitous convictions are considered

improper because they allow multiple punishments for a single criminal offense." United States v.

McCullough, 457 F.3d at 1162 (internal quotation marks omitted).

The issue of multiplicity may arise when a defendant is faced with an indictment charging multiple violations of the same statute from relatively contemporaneous conduct, such as multiple assault charges stemming from two episodes concerning a prison guard occurring close in time, see United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997)(discussing multiple 18 U.S.C. § 111 charges), abrogated on other grounds by Jones v. United States, 526 U.S. 227 (1999), or simultaneously mailing to the IRS several different false documents in support of a single tax return, see United States v. Bettenhausen, 499 F.2d 1223, 2134 (10th Cir. 1974).  In such situations, the central question is often whether the underlying conduct is part of the same transaction or comprises distinct episodes that can be punished separately.  See, e.g., United States v. Neha, No. 04-1677, 2007 WL 7017193, at *2-3 (D.N.M. Feb. 18, 2007)(Browning, J.)(concluding that the offenses charged in four counts constituted separate acts and were not multiplicitous charges for the same offensive conduct, because there was more than one rape, because the defendant was the principal in one rape and the aider and abettor in the other, and because the alleged crimes likely did not occur at the same time).

The issue of multiplicity may also arise when the defendant is charged with violations of multiple criminal statutes for the same underlying acts or omissions.  See United States v. Patterson, 760 F.Supp.2d 1116, 1120 (D.N.M. 2009)(Browning, J.).  When confronting such a situation, courts employ a two-step test: "A person may be prosecuted for more than one crime based on the same conduct (1) if each crime requires proof of a fact that the other does not, or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions."  United States v. Pearson, 203 F.3d 1243, 1267-68 (10th Cir. 2000)(citations omitted).  When, as is often the case, there is no clearly discernible congressional intent to impose

-10-

cumulative punishment, courts use the rule of statutory construction described in <u>Blockburger v.</u> <u>United States</u>.   <u>See</u> <u>United States v. Greene</u>, 239 F.App'x 431, 436 (10th Cir. 2007)(unpublished)(citing <u>United States v. Morehead</u>, 959 F.2d 1489, 1506 (10th Cir.1992), <u>aff'd</u> <u>on reh'g en banc sub nom.</u> <u>United States v. Hill</u>, 971 F.2d 1461 (10th Cir. 1992)).

The <u>Blockburger v. United States</u> rule is often known as the "same elements test."  <u>United</u> <u>States v. Pearson</u>, 203 F.3d at 1268.  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  <u>Blockburger v. United States</u>, 284 U.S. at 304.  "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."  <u>Blockburger v. United States</u>, 284 U.S. at 304 (internal quotation marks omitted).

As the Supreme Court of the United States has noted in the related context of determining when a jury instruction for a lesser-included offense may be given, an elements test is "certain and predictable . . . . [b]ecause the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial."  <u>Schmuck</u> <u>v. United States</u>, 489 U.S. 705, 720 (1989).  <u>See</u> <u>United States v. Greene</u>, 239 F.App'x at 436 (discussing <u>Schmuck v. United States</u> in context of the <u>Blockburger v. United States</u> test).  The Supreme Court has clarified, however, that the <u>Blockburger v. United States</u> test applies only to charges or convictions asserting violations of separate statutes and not to separate subsections of the same criminal provision.  <u>See</u> <u>Sanabria v. United States</u>, 437 U.S. 54, 70 n.24 (1978)(noting that the <u>Blockburger v. United States</u> test is used "to determine whether a single transaction may give rise

-11-

to separate prosecutions, convictions, and/or punishments under separate statutes").[3]

As an example of the elements test at work, in United States v. Greene the defendant was charged and convicted for both tax evasion and making a false statement for the same act of filing a form.  See 239 F.App'x at 436.  The Tenth Circuit held that the convictions were not multiplicitous, because tax evasion required proof of a substantial tax deficiency and an intent to evade taxes, neither of which the other charge required, while the false filing count required proof of knowingly signing a false statement under oath, which was not an element of tax evasion.  See United States v. Greene, 239 F.App'x at 437-38.  By contrast,  in United States v. Morehead, 959 F.2d 1489 (10th Cir. 1992), the Tenth Circuit found convictions under both 18 U.S.C. § 856(a)(1) and 18 U.S.C. § 856(a)(2) to be multiplicitous.  See 959 F.2d at 1506-08.  The 18 U.S.C. § 856(a)(2) charge required proof that the defendant knowingly maintained a house for marijuana trafficking, while the 18 U.S.C. § 856(a)(2) charge required proof that the defendant knowingly managed or

---

[3] It may also be the case that a Congressional intent not to allow prosecution for the same transaction under different statutes will trump the elements test.  In Ball v. United States, 470 U.S. 856 (1985), the Supreme Court held that a defendant could not be convicted under both then-18 U.S.C. § 922(h) -- prohibiting felons from receiving firearms -- and then-18 U.S.C. § 1202(a) -- prohibiting felons from possessing firearms -- for the same firearm.  The Supreme Court interpreted Blockburger v. United States as indicating an intent against cumulative punishment, because receiving a weapon necessarily involved possessing it, thus making the statutes multiplicitous under Blockburger v. United States.  See Ball v. United States, 470 U.S. at 861-62.  The Supreme Court buttressed this position with congressional intent expressed in legislative history, however, and also indicated that the Blockburger v. United States test was a proxy for Congress' will.  See Ball v. United States, 470 U.S. at 861-64.  The Blockburger v. United States test thus remains good law, but the decision in Ball v. United States indicates that, if a situation arose where the elements test were satisfied, but there was some other clear expression of Congressional intent not to allow cumulative punishment, then Congressional intent would govern and multiple charges for the same conduct would violate the Fifth Amendment.  The Blockburger v. United States test might be better expressed therefore not as presenting two ways in which cumulative punishment may be allowed -- based on different elements or based on Congressional intent -- but as being a two-step process in which a court first tries to discover the intent of Congress on the question, whether that intent is for or against cumulative punishment, and if that fails, then resorting to the elements test.

controlled a house, and rented, leased, or made it available for drug trafficking.  See United States v. Morehead, 959 F.2d at 1507.  The Tenth Circuit held that managing or controlling, and maintaining, were the same, and that, thus, the 18 U.S.C. § 856(a)(2) charge had an additional element -- renting or leasing -- that was not in 18 U.S.C. § 856(a)(1), but that 856(a)(1) did not contain any element that was not part of 18 U.S.C. § 856(a)(2).  Accordingly, the counts were multiplicitous.  See United States v. Morehead, 959 F.2d at 1507.

When confronted with a multiplicitous indictment, a trial court has the discretion to dismiss the multiplicitous counts or to require the government to elect between the multiplicitous counts before trial, or to vacate one of the multiplicitous convictions after trial.  See United States v. Johnson, 130 F.3d at 1426 (citing United States v. Throneburg, 921 F.2d 654, 657 (6th Cir. 1990)). If the trial court allows multiplicitous charges to go to the jury, however, the options are more limited: "Where multiplicitous convictions are found, 'the only remedy . . . is . . . to vacate one of the underlying convictions as well as the . . . sentence based upon it.'"  United States v. Barrett, 496 F.3d 1079, 1095 (10th Cir. 2007)(alterations in original)(quoting Rutledge v. United States, 517 U.S. 292, 301-02 (1996)).  The risk inherent in a failure to dispose of multiplicitous charges before trial is that it "may falsely suggest to a jury that a defendant has committed not one but several crimes." United States v. Johnson, 130 F.3d at 1426 (internal quotation marks omitted).  "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or assume the defendant is guilty on at least some of the charges."  United States v. Johnson, 130 F.3d at 1426 (internal quotation marks omitted).

## ANALYSIS

No federal offense to which Ganadonegro has directed the Court defines or punishes felony

child neglect within the meaning of the IMCA.  Consequently, the Court will not dismiss Count 3, which charges a violation of criminally negligent child abuse resulting in a child's death under N.M.S.A. 1978, § 30-6-1(D)(1).  Because Count 1 and Count 3, as well as Count 2 and Count 3, each require proof of a fact which the other does not to establish that an offense occurred, the Court concludes that neither Count 1 nor Count 2 is multiplicitous of Count 3.

## I.    THE COURT WILL NOT DISMISS COUNT 3, BECAUSE THE UNITED STATES MAY PROPERLY PROSECUTE THAT OFFENSE UNDER THE IMCA.

The United States has not tried to argue that it may prosecute N.M.S.A. 1978, § 30-6-1(D)(1) under the ACA.  It has argued, instead, that the IMCA permits it to prosecute this offense.  The IMCA "authorizes the prosecution in federal court of an Indian charged with the commission on an Indian reservation of certain specifically enumerated offenses."  Keeble v. United States, 412 U.S. at 205-06.  18 U.S.C. § 1153 provides:

> (a)    Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

> (b)    Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153.  Under the IMCA, "[t]he government may use state law only when federal law does not define and punish the Major Crimes Act offense."  United States v. Other Medicine, 596 F.3d at 681.  Nevertheless, prosecutors are not required "to charge a crime defined and punished by

federal law when a defendant's conduct fits such a crime" when "the defendant's conduct also fits a separate Major Crimes Act crime defined and punished by state law." United States v. Other Medicine, 596 F.3d at 682.  This result arises because a defendant's underlying conduct may, in a given case, result in commission of a variety of different criminal offenses.  See Negonsott v. Samuels, 507 U.S. at 104 ("[C]onduct resulting in [a] conviction for aggravated battery is punishable as at least two offenses listed in the Indian Major Crimes Act . . . ."); United States v. Other Medicine, 596 F.3d at 682 ("An 'offense' is the legally defined crime, not the underlying criminal conduct.").

## A. THE MORE RESTRICTIVE STANDARDS UNDER THE ACA THAT THE SUPREME COURT IMPOSED IN LEWIS V. UNITED STATES DO NOT APPLY TO THE IMCA.

Ganadonegro has argued that the ACA and the IMCA operate in similar ways and has relied on Lewis v. United States for the proposition that there must be a gap in federal law for a state offense to be one the United States may prosecute under the IMCA.  Based on some differences in the language contained in these two statutes, this argument is not persuasive.  The ACA assimilates state law for crimes committed within federal territorial jurisdiction:

> Whoever [in an area under federal jurisdiction] . . . is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State . . . in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a) (emphasis added).  In comparison, the IMCA provides:

> Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

18 U.S.C. § 1153(b) (emphasis added).  Under the IMCA, federal law must both "define[] and

punish[]" the enumerated crime in the IMCA for the United States not to be able to charge a state law offense that falls within that same enumerated crime.  18 U.S.C. § 1153 (emphasis added). Under the ACA, a state law offense must be one "not made punishable by any enactment of Congress" for the United States to be able to charge that crime in federal court.  18 U.S.C. § 13(a). Notably, the Supreme Court has not read this ACA language rigidly in the sense that any conduct that is punishable under federal law prevents the United States from charging a crime under ACA.[4] The language in the IMCA stating that federal law must "define[] and punish[]" the enumerated crime in the IMCA for the United States to not be able to prosecute an enumerated crime under a state statute provides more flexibility to the United States than it has under the ACA.  18 U.S.C. § 1153(b).

        This difference in language between these statutes warrants a different construction.  Courts must strive to interpret a statute so that it gives every word in that statute operative effect.  See United States v. Nordic Vill., Inc., 503 U.S. 30, 35 (1992). When terms are connected by a conjunctive term in a statute -- such as the term "and" -- courts normally interpret the statute as requiring satisfaction of both of the conjunctive terms to trigger application of the statutory provision. Bruesewitz v. Wyeth LLC, 131 S.Ct. 1068, 1078 (2011)("But linking independent ideas

_____

        [4]Specifically, the Supreme Court has held, with respect to when the underlying conduct is punishable under federal law:

        If the answer to the question is "yes," however, the court must ask the further question whether the federal statutes that apply to the "act or omission" preclude application of the state law in question, say because its application would interfere with the achievement of a federal policy, because the state law would effectively rewrite an offense definition that Congress carefully considered, or because federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue.

Lewis v. United States, 523 U.S. at 164 (citations omitted).

is the job of a coordinating junction like 'and,' not a subordinating junction like 'even though.'"); Reese Bros., Inc. v. United States, 447 F.3d 229, 235-37 (3d Cir. 2006).  When one statute includes particular language, but a related statute omits that language, courts generally presume that Congress acted intentionally and purposefully by including the language in one provision and omitting it from another.  See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. 53, 62-63 (2006)("We normally presume that, where words differ as they differ here, Congress acts intentionally and purposely in the disparate inclusion or exclusion." (internal quotation marks omitted)).  Lastly, "[i]t is presumable that Congress legislates with knowledge of our basic rules of statutory construction."  McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 495 (1991).

Defined and punished are terms within the IMCA separated by a conjunctive and should be treated as terms that must both be satisfied to trigger application of the applicable statutory provision.  See Bruesewitz v. Wyeth LLC, 131 S.Ct. at 1078.  A court should strive to give both of these words operative effect when interpreting the statute.  See United States v. Nordic Vill., Inc., 503 U.S. at 35.  Given that both the ACA and the IMCA relate to highly similar subject matter, a court is warranted in concluding that Congress intended that the applicable provisions in each act, which contain different language, be given different constructions.  See Burlington N. & Santa Fe. Ry. Co. v. White, 548 U.S. at 62-63.  Given that these principles are relatively basic rules of statutory construction -- that different statutory language will receive different interpretations -- a court is warranted in presuming that Congress understood the effect of this difference in language. See McNary v. Haitian Refugee Ctr., Inc., 498 U.S. at 495.  Thus, applying these canons of construction, the Court believes it should interpret the two provisions from the ACA and the IMCA differently.  As a result, the principles from Lewis v. United States would not govern the IMCA's interpretation, as the Supreme Court decision relies on the "not made punishable language by any

-17-

enactment or Congress" language contained in the ACA.  Lewis v. United States 523 U.S. at 159-60 (emphasis in original).

### B.    FEDERAL LAW DOES NOT DEFINE AND PUNISH FELONY CHILD ABUSE OR NEGLECT WITHIN THE MEANING OF THE IMCA.

The Ninth Circuit provides a persuasive interpretation of how the IMCA operates when a charged offense under state law overlaps with an uncharged offense under federal law and how the charged and uncharged offense qualify as two separate enumerated crimes under the IMCA.  Under the IMCA, "[t]he government may use state law only when federal law does not define and punish the Major Crimes Act offense."  United States v. Other Medicine, 596 F.3d at 681.  Nevertheless, prosecutors are not required "to charge a crime defined and punished by federal law when a defendant's conduct fits such a crime" when "the defendant's conduct also fits a separate Major Crimes Act crime defined and punished by state law."  United States v. Other Medicine, 596 F.3d at 682.  This result arises because a defendant's underlying conduct may, in a given case, result in commission of a variety of different criminal offenses.  See Negonsott v. Samuels, 507 U.S. at 104 ("[C]onduct resulting in [a] conviction for aggravated battery is punishable as at least two offenses listed in the Indian Major Crimes Act . . . ."); United States v. Other Medicine, 596 F.3d at 682 ("An 'offense' is the legally defined crime, not the underlying criminal conduct.").  The "defined and punished" language in the statute also counsels in favor of this statutory interpretation, as does the lack of the language "not made punishable by any enactment of Congress" that appears in the ACA. 18 U.S.C. §§ 13(a), 1153(b).  For federal law to define an offense under the IMCA, "[t]he law used to define an offense . . . must contain all descriptors Congress used to label the crime."  United States v. Other Medicine, 596 F.3d at 681.  For example, federal burglary statutes that punish certain burglary offenses, including burglary of a post office, a railway or steamboat post office, or

burglaries involving controlled substances, do not preclude the use of state burglary statutes punishing burglary of a residence under the IMCA based on the limited scope of the federal offenses in relation to the language enumerating burglary in the IMCA.  See United States v. Bear, 932 F.2d at 1281.

Ganadonegro argues that the United States should have charged him with involuntary manslaughter under federal law 18 U.S.C. § 1112 rather than criminally negligent child abuse resulting in death under N.M.S.A. 1978, § 30-6-1(D)(1).  See Reply at 2-3.  To address this argument, the Court must interpret whether 18 U.S.C. § 1112 defines and punishes felony child abuse or neglect.  As charged in the Superseding Indictment, Count 3 has the following elements: (i) causing or permitting; (ii) a child; (iii) to be placed in a situation that causes the child's death; (iv) which is a situation that the defendant knew or should have known would endanger the child's life or health; (v) and that the defendant acted in reckless disregard to the child's life or health in placing the child in the situation that caused its death.  N.M.S.A. 1978, § 30-6-1(A)(3), (D)(1), (F). Notably, an offense can be committed under this statute without killing the child, although the death of a child results in a more serious potential sentence.  See  N.M.S.A. 1978, § 30-6-1 (D)(1), (F). The elements of involuntary manslaughter are as follows: (i) the unlawful killing: (ii) of a human being; (iii) without malice; (iv) through either: (a) the commission of an unlawful act not amounting to a felony; or (b) while committing a lawful act in an unlawful manner, or without due caution and circumspection, which act might produce death.  See 18 U.S.C. § 1112(a); Tenth Circuit Pattern Jury Instructions Criminal § 2.54.1, at 185 (2011)(Involuntary Manslaughter).  When the killing occurs outside of a situation involving the commission of an unlawful act not amount to a felony, the United States must prove to secure a conviction under 18 U.S.C. § 1112(a) for involuntary manslaughter that defendant acted with "gross negligence amounting to wanton and reckless

disregard for human life." Tenth Circuit Pattern Jury Instructions Criminal § 2.54.1, at 185. This mens rea requirement is equivalent to "'gross' or 'criminal' negligence," and thus contains a similar mens rea requirement to an offense committed under N.M.S.A. 1978, § 30-6-1(D)(1). United States v. Browner, 889 F.2d 549, 553 (5th Cir. 1989).

It is certainly plausible that a defendant could be punished under 18 U.S.C. § 1112(a) for the same underlying conduct that would violate N.M.S.A. 1978, § 30-6-1(D)(1), as both contain largely identical mens rea requirements and require the victim's death. It is difficult to say, however, that involuntary manslaughter defines an offense for felony child abuse within the meaning of 18 U.S.C. § 1153(b). First, 18 U.S.C. § 1112(a) applies more broadly to offenses not involving children. "The law used to define an offense under the Major Crimes Act must contain all descriptors Congress used to label the crime." United States v. Other Medicine, 596 F.3d at 681. Nothing in 18 U.S.C. § 1112(a) regarding involuntary manslaughter expressly applies to child abuse or neglect. That distinction explains why killing a child under N.M.S.A. 1978, § 30-6-1 results in a more severe range of punishment than killing someone under 18 U.S.C. § 1112(a) -- the former being a first-degree felony involving death of a child that is punishable by up to life in prison and the latter resulting in a maximum sentence of eight years. See N.M.S.A. 1978, § 31-18-15(A)(1); 18 U.S.C. § 1112. Second, 18 U.S.C. § 1153(a) includes as enumerated offenses under the IMCA "murder, manslaughter, . . . [and] felony child abuse or neglect." 18 U.S.C. § 1153(a). Given that 18 U.S.C. § 1153(a) discusses both manslaughter, and felony child abuse or neglect, it is difficult to say that 18 U.S.C. § 1112(a) qualifies as defining both manslaughter and felony child abuse or neglect. A court should strive to give both of these words in the IMCA operative effect when interpreting the statute. See United States v. Nordic Vill., Inc., 503 U.S. at 35. Allowing involuntary manslaughter under 18 U.S.C. § 1112(a) to define both manslaughter, and felony child abuse or neglect, would

-20-

run contrary to this canon of construction.  See United States v. Other Medicine, 596 F.3d at 680-81 (recognizing that 18 U.S.C. § 113(a)(5) could not serve as more than one enumerated crime under the IMCA, specifically both "an assault against an individual who has not attained the age of 16 years," and "felony child abuse or neglect").   Consequently, the Court declines to adopt Ganadonegro's argument that the United States cannot prosecute him for an offense under N.M.S.A. 1978, § 30-6-1(D).[5]

Ganadonegro's argument that federal law defines and punishes felony child abuse because 18 U.S.C. § 1111(a) makes it first degree murder to commit a murder through child abuse is unpersuasive.  This statute defines child abuse as "intentionally or knowingly causing death or serious bodily injury to a child."  18 U.S.C. § 1111(c)(3) (emphasis added).  This definition is notably limited to only this particular statutory section as opposed to setting forth a standalone offense.  See 18 U.S.C. § 1111(c)(3) (providing that the enumerated definitions are only "[f]or purposes of this section").  An offense under N.M.S.A. 1978, § 30-6-1(D), as charged in the Superseding Indictment, has a mens rea requirement of "criminal negligence," which means "that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child." N.M.S.A. 1978, § 30-6-1(A)(3), (D) (emphasis added).  This mens rea requirement under the New Mexico statute is a less culpable one than that required under 18 U.S.C. § 1111(c)(3).  Thus, a person could commit an offense under this New Mexico statute without committing an offense under  18 U.S.C. § 1111(a) based on perpetrating child abuse. Consequently, it is difficult to say that federal law both defines and punishes the offense charged in Count 3 when one could secure a conviction under the New Mexico statute in a given case but

_____

[5]Ganadonegro has not disputed that N.M.S.A. 1978, § 30-6-1(D) defines and punishes felony child abuse or neglect within the meaning of the IMCA.  See Reply at 1-4.

not secure a conviction under the federal statute.  More importantly, the IMCA refers to as an enumerated crime "felony child abuse or neglect." 18 U.S.C. § 1153(a) (emphasis added).  The term neglect entails a less culpable mens rea than intentional or knowing conduct.  When a statute includes a term with a particular legal meaning based on prior precedent, courts presume that the drafter of the statute intended the term to have that particular legal meaning.  See Clay v. United States, 537 U.S. 522, 527 (2003).  Black's Law Dictionary defines neglect as "[t]he omission of proper attention to a person or thing, whether inadvertent, negligent, or willful."  Black's Law Dictionary 1132 (9th ed. 2009)(emphasis added).  Thus, because 18 U.S.C. § 1111(a) punishes only knowing or intentional child abuse, it cannot punish or define felony child neglect within the meaning of the IMCA.  "The law used to define an offense under the Major Crimes Act must contain all descriptors Congress used to label the crime," a standard which is not met here.  United States v. Other Medicine, 596 F.3d at 681.  It is arguable that 18 U.S.C. § 1111 could define and punish felony child abuse resulting in death, as opposed to felony child neglect, but that issue is not before the Court.

Furthermore, 18 U.S.C. § 1111 already serves as one of the enumerated crimes under the IMCA, specifically murder.  18 U.S.C. § 1153(a).  One federal offense should not normally serve as two separate enumerated crimes under the IMCA.  See United States v. Other Medicine, 596 F.3d at 680-81 (recognizing that 18 U.S.C. § 113(a)(5) could not serve as more than one enumerated crime under the IMCA, specifically both "an assault against an individual who has not attained the age of 16 years" and "felony child abuse or neglect").  A court should strive to give every term in a statute operative effect when interpreting the statute.  See United States v. Nordic Vill., Inc., 503 U.S. at 35.  Allowing murder under 18 U.S.C. § 1111 to define both murder and felony child abuse or neglect under the IMCA would run contrary to this canon of construction.  Consequently, the

Court will not dismiss Count 3 in the Superseding Indictment, because the United States may properly charge that offense under the IMCA.

## II.   THE COURT WILL NOT DISMISS COUNT 3 IN THE SUPERSEDING INDICTMENT OR REQUIRE THE UNITED STATES TO ELECT A THEORY ON WHICH IT WILL PROCEED AT TRIAL ON THE BASIS THAT COUNT 3 IS MULTIPLICITOUS OF BOTH COUNTS 1 AND 2.

The Tenth Circuit's "jurisprudence establishes that multiplicitous sentences violate the Double Jeopardy Clause." United States v. McCullough, 457 F.3d at 1162 (internal quotation marks omitted).  "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." United States v. McCullough, 457 F.3d at 1162.  "Although multiplicity is not fatal to an indictment, multiplicitous counts which may result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense." United States v. McCullough, 457 F.3d at 1162 (internal quotation marks omitted).

The issue of multiplicity may also arise when the defendant is charged with violations of multiple criminal statutes for the same underlying acts or omissions. See United States v. Patterson, 760 F.Supp.2d at 1120.  When confronting such a situation, courts employ a two-step test: "A person may be prosecuted for more than one crime based on the same conduct (1) if each crime requires proof of a fact that the other does not, or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions." United States v. Pearson, 203 F.3d at 1267-68 (citations omitted).  When, as is often the case, there is no clearly discernible congressional intent to impose cumulative punishment, courts use the rule of statutory construction described in Blockburger v. United States. See United States v. Greene, 239 F.App'x at 436.

The Blockburger v. United States rule is often known as the "same elements test." United

States v. Pearson, 203 F.3d at 1268.  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  Blockburger v. United States, 284 U.S. at 304.  "A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other."  Blockburger v. United States, 284 U.S. at 304 (internal quotation marks omitted).

As the Supreme Court has noted in the related context of determining when a jury instruction for a lesser-included offense may be given, an elements test is "certain and predictable . . . . [b]ecause the elements approach involves a textual comparison of criminal statutes and does not depend on inferences that may be drawn from evidence introduced at trial."  Schmuck v. United States, 489 U.S. at 720.  See United States v. Greene, 239 F.App'x at 436 (discussing Schmuck v. United States in context of the Blockburger v. United States test).  The Supreme Court has clarified, however, that the Blockburger v. United States test applies only to charges or convictions asserting violations of separate statutes and not to separate subsections of the same criminal provision.  See Sanabria v. United States, 437 U.S. at 70 n.24 (noting that the Blockburger v. United States test is used "to determine whether a single transaction may give rise to separate prosecutions, convictions, and/or punishments under separate statutes").

The Superseding Indictment contains the following three charges: (i) second-degree murder in violation of 18 U.S.C. § 1111; (ii) voluntary manslaughter in violation of 18 U.S.C. § 1112; and (iii) negligent child abuse resulting in death in violation of N.M.S.A. 1978, § 30-6-1(D)(1) and 18

U.S.C. § 13.  See Superseding Indictment at 1-2.[6]  18 U.S.C. § 1111 provides with respect to second-

degree murder:  "Murder is the unlawful killing of a human being with malice aforethought."  18

U.S.C. § 1111(a).  18 U.S.C. § 1112(a) provides with respect to voluntary manslaughter:

"Manslaughter is the unlawful killing of a human being without malice.  It is of two kinds:

Voluntary -- Upon a sudden quarrel or heat of passion."  18 U.S.C. § 1112(a).  18 U.S.C. § 13

provides as it applies to the charge in Count 3:

> Whoever within [Indian country] is guilty of any act or omission which, although not
> made punishable by any enactment of Congress, would be punishable if committed
> or omitted within [New Mexico], by the laws thereof in force at the time of such act
> or omission, shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13.  N.M.S.A. 1978, § 30-6-1(D)(1) provides: "Abuse of a child consists of a person

knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child

to be: (1) placed in a situation that may endanger the child's life or health."  N.M.S.A. 1978, § 30-6-

1(D)(1).

The elements of an offense under 18 U.S.C. § 1111(a) are as follows: (i) unlawful killing;

(ii) of a human being; (iii) with malice aforethought; and (iv) causation.  See 18 U.S.C. § 1111(a).[7]

The elements of an offense under 18 U.S.C. § 1112(a) are as follows: (i) unlawful killing; (ii) of a

---

[6]All of the Counts rely on 18 U.S.C. § 1153 or 18 U.S.C. § 13, because the alleged offenses were committed on Indian country.  See Superseding Indictment at 1-2.  Consequently, the Court will not address those jurisdictional elements in its double-jeopardy analysis, because they are all identical.

[7]The Tenth Circuit Pattern Criminal Jury Instructions provide the following elements for second-degree murder: (i) "the defendant caused the death of the victim named in the indictment;" (ii) "the defendant killed the victim with malice aforethought;" and (iii) "the killing took place within the [territorial] [special maritime] jurisdiction of the United States."  Tenth Circuit Pattern Jury Instructions Criminal § 2.53, at 181 (2011)(Murder in the Second Degree).  Malice aforethought "means either to kill another person deliberately and intentionally, or to act with callous and wanton disregard for human life."  Tenth Circuit Pattern Jury Instructions Criminal § 2.53, at 181.

human being; (iii) without malice and upon a sudden quarrel or heat of passion; and (iv) causation.[8]

See 18 U.S.C. § 1112(a).  As charged in the Superseding Indictment,[9] Count 3 has the following

elements: (i) causing or permitting; (ii) a child; (iii) to be placed in a situation that causes the child's

death; (iv) which is a situation that the defendant knew or should have known would endanger the

child's life or health; (v) and that the defendant acted in reckless disregard to the child's life or

health in placing the child in the situation that caused its death.  See N.M.S.A. 1978, § 30-6-1(A)(3),

(D)(1), (F).[10]  Notably, an offense can be committed under this statute without killing the child,

---

[8]The Tenth Circuit Pattern Criminal Jury Instructions provide the following elements for voluntary manslaughter: (i) "the defendant killed [the victim named in the indictment];" (ii) "the defendant acted unlawfully;" (iii) "while in [sudden quarrel] [heat of passion], and therefore without malice, the defendant: (a) intentionally killed [the victim named in the indictment];" (b) "intended to cause [the victim named in the indictment] serious bodily injury; or (c) acted recklessly with extreme disregard for human life;" and (iv) "the killing took place within the [territorial] [special maritime] jurisdiction of the United States."  Tenth Circuit Pattern Jury Instructions Criminal § 2.54, at 183 (Murder in the Second Degree).

[9]Count 3 in the Superseding Indictment uses somewhat different phrasing and structure than what appears in N.M.S.A. 1978, § 30-6-1(D)(1) and the applicable uniform jury instruction.  The Court expresses no opinion on the propriety of the United States charging the crime in this manner except to comment that the jury charge ultimately submitted to the jury may contain the elements in a different order or with slightly different phrasing than what appears in the Superseding Indictment.

[10]The Court sets out the elements in the most logical manner for discussion and to make them track the statute and the applicable uniform jury instruction; it does not intend to set out the elements as they may ultimately appear in the charge.  In relation to the crime as charged in the Superseding Indictment, the New Mexico Uniform Jury Instructions provide the following elements for this offense: (i) that the defendant caused the child to be placed in a situation which endangered the life or health of the child; (ii) that the defendant acted with reckless disregard and without justification; (iii) that the defendant's actions or failure to act resulted in the death of the child; (iv) that the victim was under the age of eighteen; and (v) that the offense happened in New Mexico on or about the time charged in the indictment.  See N.M.R.A. 14-602 UJI (2011).  The New Mexico Uniform Jury Instructions further define reckless disregard as follows: (i) the defendant knew or should have known that his or her conduct created a substantial and foreseeable risk; (ii) the defendant disregarded that risk; and (iii) the defendant was wholly indifferent to the consequences of the conduct and to the welfare and safety of the child.  See N.M.R.A. 14-602 UJI.

although the death of a child results in a more serious potential sentence.  See  N.M.S.A. 1978, § 30-6-1 (D)(1), (F).

Count 1 and Count 3 are not multiplicitous.  Count 1 requires committing: (i) an unlawful killing; and (ii) doing so with malice aforethought.  See 18 U.S.C. § 1111(a).  Acting with malice aforethought is an additional fact that the prosecution does not need to prove under N.M.S.A. 1978, § 30-6-1(D)(1).  See N.M.S.A. 1978, § 30-6-1(D)(1).  As charged in the Superseding Indictment, Count 3 has the following elements: (i) causing or permitting; (ii) a child; (iii) to be placed in a situation that causes the child's death; (iv) which is a situation that the defendant knew or should have known would endanger the child's life or health; (v) and that the defendant acted in reckless disregard to the child's life or health in placing the child in the situation that caused its death.  N.M.S.A. 1978, § 30-6-1(A)(3), (D)(1), (F).  The following elements are additional facts that the United States does not need to prove under 18 U.S.C. § 1111(a): (i) committing the offense against a child, defined by statute as a person less than eighteen years of age, see N.M.S.A. 1978, § 30-6-1(D)(1); (ii) that the defendant knew or should have known his conduct would endanger the child's life or health; and (iii) that the defendant acted in reckless disregard to the child's life or health by placing the child in the situation that cause its death.  Furthermore, child abuse resulting in death is not a lesser included offense of second-degree murder, because the offense is not "necessarily committed in carrying out of the greater crime." Black's Law Dictionary 1187 (9th ed. 2009).  They contain distinct mens rea requirements, with the New Mexico offense requiring only criminally negligent conduct, N.M.S.A. 1978, § 30-6-1(A), (D)(1), and with second-degree murder requiring that the defendant act "deliberately and intentionally, or . . . with callous and wanton disregard for human life."  Tenth Circuit Pattern Jury Instructions Criminal § 2.53, at 181.  Furthermore, child abuse resulting in death requires a specific victim -- a child.

Count 2 and Count 3 are not multiplicitous.  Count 2 requires proof that the defendant commit the killing upon a sudden quarrel or heat of passion.  See 18 U.S.C. § 1112(a).  Acting based upon a sudden quarrel or heath of passion is an additional fact that the prosecution does not need to prove under N.M.S.A. 1978, § 30-6-1(D)(1).  As charged in the Superseding Indictment, Count 3 has the following elements: (i) causing or permitting; (ii) a child; (iii) to be placed in a situation that causes the child's death; (iv) which is a situation that the defendant knew or should have known would endanger the child's life or health; (v) and that the defendant acted in reckless disregard to the child's life or health in placing the child in the situation that caused its death.  N.M.S.A. 1978, § 30-6-1(A)(3), (D)(1), (F).  The following elements are additional facts that the United States does not need to prove under 18 U.S.C. § 1111(a): (i) committing the offense against a child, defined by statute as a person less than eighteen years of age, see N.M.S.A. 1978, § 30-6-1(D)(1); (ii) that the defendant knew or should have known his conduct would endanger the child's life or health; and (iii) that the defendant acted in reckless disregard to the child's life or health by placing the child in the situation that cause its death.  Child abuse resulting in death is not a lesser included offense of second-degree murder, because the offense is not "necessarily committed in carrying out of the greater crime."  Black's Law Dictionary, supra, at 1187.  It is not necessary for there to be a sudden quarrel or heat of passion to commit an offense under N.M.S.A. 1978, § 30-6-1(D)(1), which permits a conviction based on criminal negligence.  In terms of mens rea, voluntary manslaughter requires either intentional conduct or criminal recklessness -- both of which are greater mens rea requirements than criminal negligence.  See Tenth Circuit Pattern Jury Instructions Criminal § 2.54, at 183.  Likewise, child abuse resulting in death requires a specific victim -- a child.

Thus, neither Count 1 nor Count 2 is multiplicitous with Count 3.  The United States may proceed to trial on all these Counts without violating Ganadonegro's double-jeopardy rights.

Consequently, the Court declines to adopt Ganadonegro's multiplicity argument.

**IT IS ORDERED** that the Defendant's Motion to Dismiss Count 3, filed December 6, 2011

(Doc. 218), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
Jeremy Pena
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

   *Attorneys for the Plaintiff*

Kari Converse
Brian A. Pori
  Assistant Federal Public Defenders
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

   *Attorneys for the Defendant*