**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                                                                  No. CR 09-0312 JB

KALVEST GANADONEGRO,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on the Defendant's Second Motion in Limine to Exclude Testimony Regarding Intent and Burden of Proof, filed December 8, 2011 (Doc. 219)("Motion in Limine"). The Court held a hearing on February 2, 2012. The primary issue is whether the Court should prohibit Plaintiff United States of America's witnesses from testifying to the effect that the injuries to the alleged victim, Q.S., constitute child abuse <u>unless proven otherwise</u>. Weighing the probative value of this expert and lay testimony against the danger of unfair prejudice, confusion of the issues, and misleading the jury, the Court concludes that it is appropriate to grant the Motion in Limine. The testimony has a substantial likelihood of confusing the jury about the presumption of innocence and the United States' burden of proof and is unfairly prejudicial. Ganadonegro should be cautious, however, about opening the door to this testimony on cross-examination. The Court's prior Memorandum Opinion and Order, filed September 1, 2011 (Doc. 170)("MOO"), which granted Ganadonegro's request that the Court issue an order preventing the United States and any of its medical witnesses from mentioning, in opening statement, closing argument, during testimony, or by documents, an expert medical opinion that Ganadonegro necessarily had the intent to kill or seriously injure because of the nature of the injuries that the

deceased child suffered, remains in effect.

## PROCEDURAL BACKGROUND

On September 1, 2011, the Court issued a MOO granting Ganadonegro's request that the Court issue an "order preventing the prosecution and any of its medical witnesses from mentioning, in opening statement, closing argument, during testimony, or by documents, an expert medical opinion that Ganadonegro necessarily had the intent to kill or seriously injure because of the nature of the injuries that the deceased child suffered." MOO at 1. Ganadonegro went to trial on charges of intentional child abuse, charged as first-degree murder, on September 1, 2011. See Clerk's Minutes, filed September 1, 2011 (Doc. 192). During the previous trial, Dr. Kathleen Marie Lopez testified as follows: "I want to make sure clinicians know that this could be nonaccidental trauma until proven otherwise." Trial Transcript at 500:22-24 (taken September 6, 2011)(Lopez)(Doc. 213)(emphasis added)("Sept. 6, 2011 Trial Tr."). Dr. Leslie Johnson testified as follows: "Because the combination of flame hemorrhages and papilledema are nonaccidental head trauma until proven otherwise in pediatrics. That is the rule." Sept. 6, 2011 Trial Tr. at 285:17-19 (Johnson). Dr. Johnson also testified: "With this we have abuse until proven otherwise. That's how we operate in medicine." Sept. 6, 2011 Trial Tr. at 324:23-24 (Johnson). Ganadonegro found some of this testimony objectionable. See Sept. 6, 2011 Trial Tr. at 365:9-16 (Converse). The United States' had other doctors testify who did not apply this presumption, such as Dr. Elliot Crow who testified: "You always have a list of things you look for. You never assume it's one thing." Trial Transcript at 613:23-25 (taken September 7, 2011)(Crow)(Doc. 214). The Court gave an instruction in the jury charge to help avoid confusion about Dr. Lopez' and Dr. Johnson's testimony. See Court's Final Jury Instructions (Given) at 10, filed September 12, 2011 (Doc. 188)("The government has the burden of proving Mr. Ganadonegro guilty beyond a reasonable doubt, and if it fails to do so, you

must find Mr. Ganadonegro not guilty.  This may be a different way of proceeding than that used by doctors, but that is the way it works in a criminal case.").

The jury hung, and the Court declared a mistrial.  See Jury Notes at 2-4, filed September 13, 2011 (Doc. 194).  On October 9, 2011, the United States superseded the indictment with a new one, charging three separate charges: (i) second-degree murder in violation of 18 U.S.C. § 1111; (ii) voluntary manslaughter in violation of 18 U.S.C. § 1112; and (iii) negligent child abuse resulting in death in violation of N.M.S.A. 1978, § 30-6-1(D)(1) and 18 U.S.C. §§ 13 and 1153.  See Superseding Indictment at 1-2 (Doc. 201).

On December 8, 2011, Ganadonegro filed his Motion in Limine.  Ganadonegro requests that the Court enter an order "preventing the prosecution and any of its medical witnesses from mentioning, in opening statement, closing argument or during testimony, or via documents, an expert medical opinion that [he] necessarily had the intent to kill or seriously injure" the victim based on "the nature of the injuries that the deceased child suffered."  Motion in Limine at 1.  He contends that "[t]o permit such testimony would deny [him] the right to due process and a fair trial" in violation of the Fifth and Sixth Amendments to the United States Constitution, because the evidence is unfairly prejudicial.  Motion in Limine at 1.  He argues that this evidence would also violate rules 702, 704(b), and 403 of the Federal Rules of Evidence, because "no expert witness noticed by the government has any psychological or psychiatric expertise."  Motion in Limine at 1. In support of his request, Ganadonegro notes that, in the previous trial in this case, some of the United States' witnesses testified "that the deceased child's symptoms were the result of the crime of child abuse, and that in such a situation, guilt is assumed unless proven otherwise."  Motion in Limine at 2 (emphasis added).  Ganadonegro asserts that "[a] jury would inevitably rely on the expert testimony that this constellation of symptoms constitute the crime of child abuse with the

accompanying mens rea." Motion in Limine at 4. He contends that, even if doctors approach their practice with this viewpoint, permitting the jury to hear this testimony would run counter to rule 403, because the evidence is minimally relevant and unfairly prejudicial. See Motion in Limine at 4. He further argues that, given the disputed nature of Ganadonegro's mens rea, "it is critical not to further confuse the jury with testimony that flips the burden of proof regarding intent." Motion in Limine at 5.

On December 22, 2011, the United States filed its Response to the Motion in Limine. See United States' Response to Defendant's Second Motion in Limine to Exclude Testimony Regarding Intent and Burden of Proof (Doc. 226)("Response"). The United States contends that rule 704(b) "does not prevent the expert from testifying to facts or opinions from which the jury could conclude or infer that the defendant has the requisite mental state." Response at 4. It argues that "no physician testified to the Defendant's state of mind," and that "[t]hey simply concluded, based upon their examination of Q.S. and/or her medical records, that Q.S. was, in fact, a victim of child abuse." Response at 5. It argues that the doctors will not testify regarding the defendant, but only their investigation. See Response at 5-6. The United States asserts that this testimony will not prejudice Ganadonegro, because "[h]e will be afforded a full and fair opportunity to cross examine each expert about the methods underlying their respective opinions." Response at 6. The United States contends that "a physicians' methodology is integral to an understanding of how a doctor reached his or her conclusion." Response at 6. It argues that restricting these experts' testimony "would prejudice the Government's case substantially in that it would severely inhibit the jury's ability to judge the credibility and believability of each expert witness." Response at 7.

On January 4, 2012, Ganadonegro filed his Reply. See Reply to Response to Second Motion in Limine to Exclude Testimony Regarding Intent and Burden of Proof (Doc. 229)("Reply"). He

emphasizes that the problematic testimony is that the doctors were convinced that child abuse occurred unless proven otherwise. See Reply at 2. Ganadonegro emphasizes that he is most concerned, based on the testimony at the previous trial, about two witnesses, Dr. Lopez and Dr. Johnson, but mentioned that other doctors might also testify in this manner at the retrial. See Reply at 2 n.2. He notes that some of the doctors did not feel the need to testify in this manner and could provide their expert opinion without difficulty. See Reply at 2 & n.1. Ganadonegro asserts that he has no intention of attacking the doctors' methodologies. See Reply at 3-4. He argues that the United States insists without justification "that it is somehow necessary to lay out for the jury that as part of their jobs, doctors presume guilt unless proven otherwise." Reply at 3. He contends that such testimony violates rule 704 of the Federal Rules of Evidence. See Reply at 3.

At the hearing on February 2, 2012, the Court inquired whether it would be appropriate to limit a doctor's testimony regarding how they reached their conclusion, particularly if the doctor was also a fact witness. See Transcript of Hearing at 20:25-21:23 (taken February 2, 2012)(Converse)("Tr.").[1] Ganadonegro asserted that he was primarily concerned with the problematic statement that some witnesses had made: that the injuries were caused by child abuse until proven otherwise. See Tr. at 22:8-19 (Converse). He argued that this statement is not necessary for the doctors to give their expert opinion or to relate the factual circumstances of what they observed. See Tr. at 23:11-17 (Converse). Ganadonegro contended that, because he is the only one accused of wrongdoing, this statement unduly prejudices him. See Tr. at 23:18-23 (Converse). The Court questioned how it could prevent testimony regarding historical facts in terms of a doctor who also serves as a fact witness. See Tr. at 23:24-24:7 (Court). Ganadonegro asserted that this

---

[1] The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

particular evidence would be more relevant in the context of preventing future child abuse and that there is no need to do so here. See Tr. at 24:8-25:14 (Converse). The Court stated that it recalled that much of this evidence came out during cross-examination. See Tr. at 25:15-25 (Court). Ganadonegro represented that much of the evidence came out on direct examination. See Tr. at 26:1-19 (Converse).

The Court asked the United States why it needed this testimony. See Tr. at 28:6-22 (Court). The United States argued that this testimony is necessary to fully develop the experts' opinions. See Tr. at 28:23-29:19 (Rozzoni). The Court responded that the doctors could provide their opinion without this specific testimony. See Tr. at 30:5-7 (Court). The United States emphasized that it does not want to interfere with how its experts reach their conclusions. See Tr. at 30:23-25 (Rozzoni). The United States represented that it would need to talk with its experts to determine if they need to use this additional statement regarding that they assume child abuse occurred until proven otherwise to fully explain their methodology. See Tr. at 21:6-8 (Rozzoni). The United States asserted that Dr. Johnson's testimony would likely be more problematic in this respect given her testimony at the previous trial. See Tr. at 32:7-33:6 (Rozzoni). The United States contended that it wants to avoid a mistrial on a technicality if one of these doctors disobeys the in limine order and that it did not want to curtail its experts' opinions. See Tr. at 33:7-16 (Rozzoni). The Court suggested that the United States could get in contact with its experts to determine if they needed to give this testimony or could give their opinions without this testimony. See Tr. at 33:17-34:8 (Court). The Court stated that, if the doctors felt that they had to give this specific answer, they could testify that 'they cannot answer the question truthfully without some words that the Court has prohibited me from using without a bench conference' and then the parties could discuss the issue with the Court. See Tr. at 34:25-34:8 (Court); id. at 35:15-18 (Court). The United States agreed to

speak to both Dr. Johnson and Dr. Lopez to try to resolve this issue.  See Tr. at 35:9-14 (Rozzoni). Ganadonegro asserted that he was amenable to the United States discussing this issue with its witnesses to seek a resolution.  See Tr. at 36:13-16 (Court, Converse).

On February 14, 2012, the United States submitted a facsimile transmitted letter to the Court. See Letter from Jennifer M. Rozzoni to the Court (dated February 14, 2012), filed February 14, 2012 (Doc. 250)("Letter").  The United States relates that it contacted Dr. Lopez and Dr. Johnson regarding whether they could testify truthfully without using the phrase "until proven otherwise" after the term child abuse.  Letter at 2.  The United States proffers that Dr. Lopez related that she cannot definitely say that child abuse occurred.  See Letter at 2.  Dr. Lopez related that this until proven otherwise phrase is "a very common phrase used by most of us when we do not have a clear history of the injury" and that this phrase "tells the clinician that they need to have an appropriate trauma history that would account for the injuries on the study."  Letter at 2.  Dr. Johnson related: "I think that if I were to testify again, I would likely still use that term when describing my thought process" during the evaluation.  Letter at 2.  Dr. Johnson also stated that, in her statement of conclusion regarding the diagnosis she reached, omitting this phrase would not affect the truthfulness of her testimony.  See Letter at 2-3.  The United States asserts in the Letter that it maintains its position that the doctors should be able to testify using the phrase until proven otherwise.  See Letter at 3.

## EXPERT TESTIMONY ON ULTIMATE ISSUES

Rule 704 of the Federal Rules of Evidence states:

(a) **In General -- Not Automatically Objectionable.**  An opinion is not objectionable just because it embraces an ultimate issue.

(b) **Exception.**  In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition

>that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone.

Fed. R. Evid. 704. "Traditionally, there was a general doctrine that witnesses could not give their opinion or conclusions on an ultimate issue of fact." Vondrak v. City of Las Cruces, No. 05-0172, 2009 WL 3241555, at *10 (D.N.M. Aug. 25, 2009)(Browning, J.). "The stated justification was sometimes that such testimony usurps the function or invades the province of the jury." Vondrak v. City of Las Cruces, 2009 WL 3241555, at *10 (quoting 1 K. Broun, McCormick on Evidence § 12 (6th ed. 2006 update)). The Federal Rules of Evidence reflect that the ultimate issue rule has been abolished. See United States v. Smith, 156 F.3d 1046, 1054 (10th Cir. 1998). Although rule 704(a) permits an expert to testify about areas that embrace an ultimate issue, there are some other limitations, aside from those expressed in rule 704(b), regarding testimony on ultimate issues. More specifically, the United States Court of Appeals for the Tenth Circuit has stated: "[A]n expert may not state legal conclusions drawn by applying the law to the facts." A.E. By and Through Evans v. Indep. Sch. Dist. No. 25, of Adair Cnty., Okl., 936 F.2d 472, 476 (10th Cir. 1991).

Rule 704(b) prohibits an expert from expressly stating the final conclusion or inference as to a defendant's mental state; it does not prevent an expert from testifying to facts or opinions from which the jury could conclude or infer that the defendant had the requisite mental state. See United States v. Torres, 53 F.3d 1129, 1141-42 (10th Cir. 1995). The restrictions in rule 704(b) do not apply to lay witnesses, see United States v. Goodman, 633 F.3d 963, 968 (10th Cir. 2011), although the lay witnesses' testimony must still be helpful to the trier of fact to satisfy rule 701, see Fed. R. Evid. 701(b). "[Rules 701, 702, and 403] afford ample assurances against the admission of opinions [under rule 704] which would merely tell the jury what result to reach, somewhat in the manner of the oath-helpers of an earlier day." United States v. Barile, 286 F.3d 749, 759-60 (4th Cir. 2002).

Pursuant to rule 704, it is the task of the courts "to distinguish [helpful] opinion testimony that embraces an ultimate fact from [unhelpful] opinion testimony that states a legal conclusion." United States v. Perkins, 470 F.3d at 158 (internal quotation marks omitted). In making that determination, a court should consider whether the question tracks the language of the legal principle or statute at issue, and then consider whether any terms employed have a specialized legal meaning. See United States v. Perkins, 470 F.3d at 158.

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has recently reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th

Cir. 1980). As the Supreme Court of the United States recently noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 543 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 453 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note).

## **ANALYSIS**

Weighing the probative value of the expert and lay testimony to the effect that the doctors assumed Q.S.'s injuries were the result of child abuse until proven otherwise against the danger of unfair prejudice, confusion of the issues, and misleading the jury, the Court concludes that it is

appropriate to grant the Motion in Limine.  The testimony has a substantial likelihood of confusing the jury about the presumption of innocence and the United States' burden of proof and is unfairly prejudicial.  Ganadonegro should be cautious about opening the door to this testimony on cross-examination.

The last three words of the proffered evidence, testimony to the effect that Dr. Lopez and Dr. Johnson assumed Q.S.'s injuries were the result of child abuse <u>until proven otherwise</u>, are minimally probative.  It is undisputed that Dr. Lopez and Dr. Johnson had a great deal of freedom in developing their opinion as to Q.S.'s injuries during the previous trial.  Ganadonegro finds only a small component of their testimony -- the last three words -- objectionable, specifically that they assumed what occurred to Q.S. was child abuse until proven otherwise.  Both doctors testified that they concluded that the injuries were the result of child abuse.  Even if the doctors rely on this standard in their practice, it adds little to the presentation of their opinion to the jury.  Ganadonegro has not sought to limit any other portion of their expert testimony except the words "until proven otherwise," because they may shift the burden of proof to the defendant in the jury's mind and confuse them about the presumption of innocence.  The Court will permit the doctors to testify in depth regarding their evaluation of Q.S.  The particular phrasing of the objectionable portion of the testimony, "until proven otherwise," is too likely to confuse the jury.  While scientists and doctors may follow this standard, jurors may not in a criminal case.  The United States has the obligation to prove its case beyond a reasonable doubt, and cannot shift the burden of proof to Ganadonegro.  At a minimum, the testimony would require that the Court give a clarifying instruction like it did in the previous trial.  <u>See</u> Court's Final Jury Instructions (Given) at 10.  The Court does not see how this additional testimony is necessary given the confusion it will cause and that the United States' witnesses will otherwise have the full ability to provide their conclusion that the injuries resulted

from child abuse. The "until proven otherwise" language creates a great risk of confusing the jury.

The language "until proven otherwise" is too similar to how the jury will be instructed regarding the presumption of innocence and may confuse the jury as to the allocation of the burden of proof. See Tenth Circuit Pattern Jury Instructions Criminal § 1.05, at 10 (2011)(Presumption of Innocence -- Burden of Proof -- Reasonable Doubt)("The law does not require a defendant to prove his innocence or produce any evidence at all."); id. § 1.01, at 2 ("The defendant pleaded not guilty and is presumed innocent."). The testimony has phrasing that might conflict with the jurors' common conception of the legal principle of a defendant being presumed innocent until proven guilty. Likewise, the presumption of innocence is a constitutional doctrine which the Court should seek to protect, particularly in light of the minimally probative value of this testimony. See Estelle v. Williams, 525 U.S. 501, 503 (1976)("The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." (citations omitted)). Testimony that undermines that constitutional right would be highly prejudicial and misleading to the jury in light of the Court's jury charge.

What the Court is doing with these three words is similar to what rule 703 does when an expert relies upon hearsay to form the basis of his or her opinions. To allow an expert to rely upon hearsay that experts in the field would necessarily rely on, a court permits the expert to rely upon those facts or data to form his or her opinion on the subject, even if those facts or data are not admissible themselves. See Fed. R. Evid. 703. Dr. Lopez and Dr. Johnson can rely upon something inadmissible, but that does not mean that they have to disclose that basis during their testimony. Rule 703 continues: "But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the

opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Here, the United States only needs these experts' conclusions. This specific aspect of their methodology is not important for purposes of the upcoming trial. If Ganadonegro wants to go into the bases of Dr. Lopez' and Dr. Johnson's opinions, he can do so, understanding that he may be opening the door to these three words. It is hard to see, however, how limiting their testimony by excluding these three words will harm the United States case. In some ways, this phrase is a qualification that may limit the usefulness of the experts' conclusions.

There is another reason that the words "until proven otherwise" are not appropriate. Rule 704(b) provides: "In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Fed. R. Evid. 704(b). Rule 704(b) prohibits an expert from expressly stating the final conclusion or inference as to a defendant's mental state; it does not prevent an expert from testifying to facts or opinions from which the jury could conclude or infer that the defendant had the requisite mental state. See United States v. Torres, 53 F.3d 1129, 1141-42 (10th Cir. 1995). The proffered testimony too closely resembles testimony that states a final conclusion as to Ganadonegro's mental state or a final inference as to his mental state -- that it is presumed he committed child abuse until proven otherwise. The issue may be less contentious if it was unclear who committed child abuse or if it was in dispute that Ganadonegro had physical interactions with Q.S. A significant amount of testimony in the previous trial involved Ganadonegro taking the stand and explaining his interactions with Q.S. when she was crying. Likewise, there was a great deal of expert testimony regarding shaken baby syndrome and whether or not it was a legitimate medical phenomenon. While these three words do not, alone, violate rule 704(b), in conjunction with the rest of Dr. Lopez'

and Dr. Johnson's testimony and in the circumstances of the previous and upcoming trial, this testimony violates the spirit of all the principles requiring the burden to always remain on the United States to prove the defendant's guilt beyond a reasonable doubt. As rule 704(b) states: "Those are matters for the trier of fact." Fed. R. Evid. 704(b). In the circumstances of the previous and upcoming trial, this testimony would likely run afoul of rule 704(b).

In the end, after reviewing the way the testimony came out in the first trial, these three words add little to the evidence. The doctors use a different method of reaching conclusions than a jury does. That difference does not diminish the strength of the doctors' opinions. But there is no compelling reason for the jury to hear this testimony that Q.S.'s injuries were considered child abuse until proven otherwise, because the testimony would likely confuse them about the United States' burden of proof and may improperly shift the burden of proof to Ganadonegro.

Any time a party cross-examines an expert about his or her basis for an opinion, the cross-examiner may ask a question that results in an answer the cross-examiner does not want the jury to hear. The process can be similar to crossing a minefield. Ganadonegro will need to be careful during cross-examination not to open the door to this evidence. He may open the door in several ways. For example, if he probes the doctors' methodologies too extensively, they may be allowed to more fully explain the basis of their opinion. Additionally, if Ganadonegro asks questions from these doctors that they cannot answer without using this phrase "until proven otherwise," they should testify that they cannot answer the question truthfully without some words that the Court has prohibited him or her from using. The parties should then approach for a bench conference to address this issue. The United States' experts should not use this testimony without the Court's prior approval.

**IT IS ORDERED** that the Defendant's Second Motion in Limine to Exclude Testimony

Regarding Intent and Burden of Proof, filed December 8, 2011 (Doc. 219), is granted. The Court will not permit Plaintiff United States of America' witnesses, particularly Dr. Kathleen Marie Lopez and Dr. Leslie Johnson, to testify to the effect that they assumed or that doctors would assume that Q.S.'s injuries were the result of child abuse "until proven otherwise." The United States should instruct all its witnesses who will testify on the subject of child abuse that they should not use this phrase "until proven otherwise." Defendant Kalvest Ganadonegro should be cautious about opening the door to this testimony on cross-examination. The Court's prior Memorandum Opinion and Order, filed September 1, 2011 (Doc. 170), which granted Ganadonegro's request that the Court issue an order preventing the United States and any of its medical witnesses from mentioning, in opening statement, closing argument, during testimony, or by documents, an expert medical opinion that Ganadonegro necessarily had the intent to kill or seriously injure because of the nature of the injuries that the deceased child suffered, remains in effect.

_____
UNITED STATES DISTRICT JUDGE

*MindCounsel:*

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
Jeremy Pena
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
Brian A. Pori
  Assistant Federal Public Defenders
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

    *Attorneys for the Defendant*