# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

   Plaintiff,

vs.               No. CR 09-0312 JB

KALVEST GANADONEGRO,

   Defendant.

## UNSEALED MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** comes before the Court on the United States' Motion *in Limine* to Exclude References to Specific Instances of Alleged Abuse on a Continued Relationship with Harrington Monte, Specific Instances of the Defendant's Good Character and References to the Term "Indian Country" as "Racist," filed February 10, 2012 (Doc. 245)("Motion"). The Court held a hearing on February 21, 2012. The primary issues are: (i) whether the Court should limit Defendant Kalvest Ganadonegro's ability to question witnesses at the upcoming trial about Quintara Smiley's interactions with Harrington Monte;[2] (ii) whether the Court should restrict Ganadonegro from using specific instances of conduct to establish his good character; and (iii) whether the Court should

---

[1]In its Sealed Memorandum Opinion and Order, filed February 27, 2012 (Doc. 286)("Sealed MOO"), the Court inquired whether the parties had any proposed redactions to protect confidential information within the Sealed MOO before the Court published a public version of the Sealed MOO. See Sealed MOO at 1 n.1. The Court gave the parties fourteen calendar days to provide notice of any proposed redactions. See Sealed MOO at 1 n.1. The parties have not contacted the Court or made any filings within CM/ECF to indicate that they have any proposed redactions. Consequently, the Court is now re-filing the Sealed MOO in an unsealed form.

[2]The parties do not consistently refer to the spelling of Monte's name. Plaintiff United States of America refers to him as "Harrington Monte." Motion at 1. Ganadonegro refers to him as "Herrington Monte." Defendant's Response to the Government's Motions in Limine at 1, filed February 21, 2012 (Doc. 260). Because the court reporter's transcripts refer to Monte as Harrington Monte, the Court will use that spelling.

restrict Ganadonegro from referring to the term Indian Country as racist. The Court will grant the Motion in part and deny the Motion in part. Because Ganadonegro does not oppose limiting his ability to present specific instances of conduct to prove his good character or his ability to refer to the term Indian Country as racist, the Court will grant that portion of the Motion. Because the evidence relating to Monte is relevant, and because the evidence's risk of confusing or misleading the jury does not substantially outweigh its probative value, the Court will deny the portion of the Motion relating to Quintara Smiley's interactions with Monte. Consistent with Ganadonegro's stipulation at the hearing, he may not argue that Monte caused Qila Smiley's death by kicking Quintara Smiley with a steel-toe boot during her pregnancy.

## PROCEDURAL BACKGROUND

Ganadonegro went to trial on charges of intentional child abuse, charged as first-degree murder, on September 1, 2011. See Clerk's Minutes, filed September 1, 2011 (Doc. 192). During the first trial, Ganadonegro's counsel asked several witnesses about the relationship between Quintara Smiley and Qila Smiley's father, Monte, including the following witnesses: (i) the victim Qila Smiley's mother, Quintara Smiley; (ii) Qila Smiley's aunt, Angelica Apache; (iii) Ganadonegro's common-law brother-in-law, Eloy Cleveland; and (iv) Qila Smiley's grand aunt, Lavell Apache. See Testimony of Quintara Smiley at 2-4 (dated September 2, 2011), filed February 10, 2012 (Doc. 245-1); Testimony of Lavell Apache at 2-3 (dated September 2, 2011), filed February 10, 2012 (Doc. 245-2); Testimony of Angelica Apache at 2 (dated September 2, 2011), filed February 10, 2012 (Doc. 245-3); Testimony of Eloy Cleveland at 2-3 (dated September 2, 2011), filed February 10, 2012 (Doc. 245-4). The jury hung, and the Court declared a mistrial. See Jury Notes at 2-4, filed September 13, 2011 (Doc. 194). On October 9, 2011, the United States superseded the indictment with a new one, charging three separate charges: (i) second-degree

murder in violation of 18 U.S.C. § 1111; (ii) voluntary manslaughter in violation of 18 U.S.C. § 1112; and (iii) negligent child abuse resulting in death in violation of N.M.S.A. 1978, § 30-6-1(D)(1) and 18 U.S.C. §§ 13 and 1153.  See Superseding Indictment at 1-2 (Doc. 201).

On February 10, 2011, the United States filed its Motion.  The United States "moves the Court to order defendant, his counsel, and his witnesses to refrain in the jury's presence from asking any question, introducing any evidence, or making any statement or argument, either directly or indirectly, concerning the following matters:" (i) references to specific instances of Monte abusing Quintara Smiley or her continued relationship with Monte; (ii) testimony regarding specific instances of conduct to show Ganadonegro's good character; and (iii) references to the term "Indian Country" as "racist."  Motion at 1-5.  The United States argues that, by alluding to Quintara Smiley's interactions with Monte in the previous trial, "[i]t appeared that defense counsel was attempting to assert two separate theories: 1) Harrington's abuse of Quintara during her pregnancy contributed to Jane Doe's ultimate death; and 2) Harrington was the actual perpetrator of Jane Doe's abuse and subsequent death."  Motion at 2.  It argues that the Court should not allow this evidence without a showing that it is relevant or, alternatively, exclude the evidence under rule 403 of the Federal Rules of Evidence, because it "will serve only to confuse the issues and mislead the jurors." Motion at 2.  The United States notes that Quintara Smiley, at the previous trial, denied continuing her relationship with Monte.  See Motion at 2.  It notes that any other witness asked about Monte "denied knowing whether Quintara was still in the relationship with" him.  Motion at 2.  The United States concedes that Monte at one time abused Quintara Smiley including when she was pregnant. See Motion at 3.  It argues that this evidence does not relate to the matters at issue in the case, particularly given that "all medical evidence indicated that Jane Doe was born healthy, without incident."  Motion at 3.

On February 21, 2012, Ganadonegro filed his Defendant's Response to the Government's Motions in Limine.  See Doc. 260 ("Response").  Ganadonegro represents that he has no opposition to the Court precluding him from "admitting specific instances of his good character . . . unless and until the Government submits specific instances of his conduct to rebut the reputation and opinion evidence of Mr. Ganadonegro's honesty and peacefulness."  Response at 1-2.  Ganadonegro also "has no objection to the Government's efforts to limit any effort to characterize the phrase 'Indian Country' as racist."  Response at 2.  He argues, however, that preventing him from questioning the witnesses regarding Monte "would deprive him of his constitutional right to present a defense to the" charges he faces.  Response at 2.  He asserts that he has a constitutional right to a fair trial. See Response at 2.  He notes that, even though Quintara Smiley "was forbidden" from seeing Monte, "she continued to associate with him even after she came to live with Mr. Ganadonegro and his family and may even have seen him on the night before the child died."  Response at 3.  He contends that the United States' evidence "does not purport to prove the identity of the person who might have inflicted" Qila Smiley's injuries.  Response at 3.

At the hearing on February 21, 2012, Ganadonegro reiterated that he does not oppose the Motion on the issue of specific instances of conduct regarding his good character.  See Transcript of Hearing at 27:25-28:7 (taken February 21, 2012)(Pori)("Tr.").[3]  He represented that he would limit his presentation of character evidence to opinion and reputation testimony, unless the United States introduces specific instances of misconduct to rebut the character evidence he presents.  See Tr. at 27:25-28:7 (Pori).  Ganadonegro also stated that he does not oppose the Motion on the issue of referring to the term Indian Country as racist.  See Tr. at 28:19-22 (Pori).  Ganadonegro asserted,

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

however, that he has a Sixth Amendment right to inquire into Quintara Smiley's interactions and associations with Monte.  See Tr. at 30:2-10 (Pori).  The United States contended that Ganadonegro seeks to confuse and mislead the jury with this line of questioning, particularly in relation to the incident where Monte kicked Quintara Smiley in the stomach with a steel-toe boot while she was pregnant.  See Tr. at 30:23-31:13 (Rozzoni).

Ganadonegro noted that some of the witnesses he questioned about Monte were aware that Quintara Smiley continued to associate with Monte.  See Tr. at 32:20-33:4 (Pori).  He asserted that the issue whether Quintara Smiley continued to interact with Monte is relatively straightforward and will not confuse the jury.  See Tr. at 33:5-22 (Pori).  He stated that, given Monte's past violent behavior, there is a reasonable inference that, if Qila Smiley was around Monte shortly before her death, Monte may have had a role in Qila Smiley's death.  See Tr. at 33:23-34:8 (Pori).  He also argued that Ganadonegro's decision to permit Quintara Smiley to stay in his home after Monte had abused her shows that Ganadonegro is not the kind of person who would commit this crime.  See Tr. at 34:25-35:6 (Pori).  The United States responded that the jury will be drawing inferences only from the defense counsel's line of questioning as opposed to the witnesses' answers, because no witness can answer affirmatively whether Quintara Smiley spent time with Monte the night before Qila Smiley's death.  See Tr. at 35:24-36:2 (Rozzoni).  Ganadonegro asserted that he would not argue before the jury that Monte's kicking of Quintara Smiley in the stomach during her pregnancy caused Qila Smiley's death.  See Tr. at 37:3-7 (Pori).  He clarified that he seeks to argue that others may have had access to Qila Smiley before her death.  See Tr. at 37:8-22 (Pori).  He noted that none of the witnesses at the previous trial were sure with whom Quintara Smiley was the night before Qila Smiley's death, because many of the people Quintara Smiley knew were at a graduation party that night.  See Tr. at 38:13-20 (Pori).  The United States countered that Ganadonegro does not need to

discuss the steel-toe boot incident to convey to the jury that Monte is an abusive person. See Tr. at 39:14-19 (Rozzoni). Ganadonegro emphasized that this incident illustrates in detail Monte's abusive nature. See Tr. at 39:20-40:3 (Pori). The United States requested that Ganadonegro provide some evidence to support his assertions that Monte was with Quintara Smiley the night before Qila Smiley's death. See Tr. at 40:5-10 (Rozzoni). Ganadonegro stated that he would provide a protective services report that contains some of this information. See Tr. at 40:11-17 (Converse, Court).

On February 21, 2012, Ganadonegro filed under seal a protective services report relating to a child abuse investigation, which discusses some of Monte's abusive behavior, including kicking someone with a steel-toe boot. See Sealed Notice of Submission at 1-2, filed February 21, 2012 (Doc. 262). The report provides:

> Source reports that mother is Ana and she does not know where she is. Source does not know what her last name is. The girls are living with the 15 year old's boyfriend. The boyfriend is in his 20's and the girls are 14 and 15 years old. Source did not know the names of any of the people there. Source did not know the names of any of the people there.
>
> Source does not know if he is the guardian or if he has custody.
>
> Source states that the younger girl came to her house yesterday asking for food. She asked her to find her mom and take her to her mom. The girl said she is not being fed. She said that she is thrown out of the house at night because her sister's boyfriend has a drinking problem. She said that he kicked her with his steel-toed boots on 06/20/07; he punches her (unknown time frames). Unknown injuries.
>
> Source reported the 14-year old is handicapped because she was born "without ears" and bad speech according to source. No physical or mental health disabilities are known to source.
>
> The 15-year-old sister has a bruise on her right eye. It is implied by the source that the boyfriend caused the black eye. Source explained that if the boyfriend is hitting the 14 year old girl, he may have caused the 15 yo's injury.

Sealed Notice of Submission at 2. On February 21, 2012, the United States filed its Reply. See

United States Sealed Reply on Motion *in Limine* to Exclude References to Specific Instances of Alleged Abuse or a Continued Relationship with Harrington Monte, Specific Instances of the Defendant's Good Character and References to the Term "Indian Country" as "Racist" (Doc. 263)("Reply").   The United States argues that the documentation does not indicate that Monte kicked Quintara Smiley with a steel-toe boot, but rather that Monte kicked Quintara Smiley's sister. See Reply at 2-3.

### RELEVANT LAW REGARDING CROSS-EXAMINATION AND IMPEACHMENT

Evidence may be limited to a specific purpose, such as for impeachment purposes only.  See Fed. R. Evid. 105.  Additionally, cross-examination serves as "the principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974).  As the Supreme Court of the United States stated in Davis v. Alaska: "Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." 415 U.S. at 316.  "[C]ross-examination pertinent to the credibility of a witness and for the development of facts that may tend to show bias or prejudice should be given the largest possible scope."  Abeyta v. United States, 368 F.2d 544, 545 (10th Cir. 1996) (internal quotation marks omitted).

In a criminal case, unduly restricting a defendant's cross examination of a witness, such as limiting the defendant's ability to impeach witnesses, can violate the Confrontation Clause.  See Davis v. Alaska, 415 U.S. at 316.  Additionally, a court may violate the Confrontation Clause when it "preludes an entire relevant area of cross-examination."  United States v. Robinson, 583 F.3d 1265, 1274 (10th Cir. 2009)(quoting United States v. Montelongo, 420 F.3d 1169, 1175 (10th Cir.

2005)).  More specifically, unduly restricting a criminal defendant's ability to impeach a witness on his or her history of mental illness violates the Confrontation Clause, including the failure to admit the witness' medical records where appropriate.  See United States v. Robinson, 583 F.3d at 1274-76.  As the United States Court of Appeals for the Tenth Circuit stated in United States v. Robinson:

> As noted above, credibility concerns not only veracity, but the witness's capacity to observe, remember, or narrate both at the time of the trial and at the time of the event.  Had the jury learned that the CI had recently admitted to hearing voices, seeing things out the window that [were] not really there, and experiencing suicidal ideation, it could have reasonably concluded that the CI had a reduced capacity to observe, remember, and recount.

583 F.3d at 1275-76 (alteration in original)(citations omitted)(internal quotation marks omitted).

## LAW REGARDING APPLICATION OF RULE 404(b)

Rule 404(b) of the Federal Rules of Evidence provides:

**(b)    Crimes, Wrongs, or Other Acts.**

    **(1)    Prohibited Uses.**  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

    **(2)    Permitted Uses; Notice in a Criminal Case.**  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  On request by a defendant in a criminal case, the prosecutor must:

        **(A)**    provide reasonable notice of the general nature of any such evidence that the prosecutor intends to offer at trial; and

        **(B)**    do so before trial -- or during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b).

Rule 404(b) states that evidence of other crimes or wrongs may not be introduced against a person to show that, upon a later occasion, he or she acted in conformity with that prior behavior

except to prove a number of enumerated issues.  A party introducing 404(b) evidence must show that: (i) the evidence is introduced for a proper purpose; (ii) the evidence is relevant; (iii) the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) the party introducing the evidence must precisely articulate the purpose for which the evidence is offered and the court must identify the purpose for which the evidence is admitted. See United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).

Rule 404(b)'s prohibition finds its source in the common-law protection of the criminal defendant from risking conviction on the basis of evidence of his character.  See C. Wright & K. Miller, Federal Practice and Procedure: Evidence § 5239, at 428, 436-37, 439 (1991); United States v. Dudek, 560 F.2d 1288, 1295-96 (6th Cir. 1977).  In United States v. Phillips, 599 F.2d 134 (6th Cir. 1979), the United States Court of Appeals for the Sixth Circuit noted, in addressing rule 404(b)'s precepts, that the rule addresses two main policy concerns:

> (1) that the jury may convict a "bad man" who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds; and (2) that the jury will infer that because the accused committed other crimes he probably committed the crime charged.

United States v. Phillips, 599 F.2d at 136.

Accordingly, some courts have found that the standards for admission of evidence to show conduct in conformity with prior conduct relax when the defendant attempts to offer rule 404(b) evidence.  The United States Court of Appeals for the Second Circuit, in United States v. Aboumoussallem, 726 F.2d 906 (2d Cir. 1984), undertook an early analysis of the admissibility of prior-crimes evidence that the defendant proffered.  The Second Circuit noted:

> [W]e believe the standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when the prosecution uses such

evidence as a sword.  The prosecution, in the Anglo-American tradition, may not ordinarily offer evidence of a defendant's prior wrongdoing for the purpose of persuading the jury that the defendant has a propensity for crime and is therefore likely to have committed the offense for which he stands trial.  As Dean Wigmore points out, the evidence "is objectionable not because it has no appreciable value but because it has too much."  Presumably, the "too much" argument means that a guilty person, and, of far more serious concern, an innocent person, may be convicted primarily because of the jury's willingness to assume his present guilt from his prior misdeed.  Wigmore also identifies objections based on the risk that the jury will convict because the defendant may not have been punished for his prior offenses and the injustice of requiring the defendant to defend against a series of accusations. . . . However, the risks of prejudice are normally absent when the defendant offers similar acts evidence of a third party to prove some fact pertinent to the defense.  In such cases the only issue arising under Rule 404(b) is whether the evidence is relevant to the existence or non-existence of some fact pertinent to the defense.

726 F.2d at 911-12 (footnotes omitted)(citations omitted).

Similarly, the United States Court of Appeals for the Fifth Circuit in United States v. Krezdorn, 639 F.2d 1327 (5th Cir. 1981), noted:

The extrinsic acts rule is based on the theory that the jury will use evidence that the defendant has, at other times, committed bad acts to convict him of the charged offense.  Consequently, the only purpose served by extrinsic offense evidence is to demonstrate the propensity of the defendant to act in a certain way, the evidence must be excluded.  When, however, the extrinsic offense was not committed by the defendant, the evidence will not tend to show that the defendant has a criminal disposition and that he can be expected to act in conformity therewith.  When the evidence will not impugn the defendant's character, the policies underlining 404(b) are inapplicable.

639 F.2d at 1332-33 (citations omitted)(internal quotation marks omitted).  In addition to the Second and Fifth Circuits, the United States Courts of Appeals for the First, Third, Seventh, and Eleventh Circuits have determined that rule 404(b) is inapplicable to admissibility of evidence of acts of third parties.  See United States v. Reed, 259 F.3d 631, 634 (7th Cir. 2001)("In deciding whether to admit such evidence, a district court should balance the evidence's probative value under Rule 401 against considerations such as prejudice, undue waste of time and confusion of the issues under Rule 403."); United States v. Morano, 697 F.2d 923, 926 (11th Cir. 1993)("But although Rule 404(b) does not

control this situation, the exceptions listed in the Rule should be considered in weighing the balance between the relevancy of this evidence and its prejudice under Rule 403."); United States v. Stevens, 935 F.2d 1380, 1401-1406 (3d Cir. 1991)("[A] defendant may introduce "reverse 404(b)" evidence so long as its probative value under Rule 401 is not substantially outweighed by Rule 403 considerations."); United States v. Gonzales-Sanchez, 825 F.2d 572, 582 n.25 (1st Cir. 1987)("Inasmuch as this evidence does not concern past criminal activity of [the defendant], Rule 404(b) is inapplicable."). In United States v. Stevens, the Third Circuit also held that a lower standard of similarity between the crime before the federal court and the "other crimes evidence" governed "reverse 404(b)" evidence, because prejudice to the defendant is not a factor. 935 F.2d at 1403.

The United States Court of Appeals for the Tenth Circuit has held that rule 404(b)'s prohibition applies to a defendant who wishes to introduce evidence of wrongdoing by another to establish his innocence. See United States v. Puckett, 692 F.2d 663, 671 (10th Cir. 1982). In United States v. Puckett, a defendant, Mauzy, sought to introduce evidence that he had been "conned" by his co-defendant, Puckett, in transactions unrelated and dissimilar to the crimes charged in the indictment. 692 F.2d at 670. The trial court did not allow Mauzy to present the evidence. See 692 F.2d at 670. "The trial court did not permit Mauzy . . . to call certain witnesses who would testify that they too had been 'conned' by Puckett in transactions unrelated and dissimilar to the crimes charged in the indictment." 692 F.2d at 670.

Mauzy contended on appeal in United States v. Puckett that "the refusal to admit this evidence violate[d] his due process right to present a defense." 692 F.2d at 670-71. The Tenth Circuit affirmed. See 692 F.2d at 671. The Tenth Circuit noted that the 404(b) evidence offered by Mauzy pertained to activities by Puckett that were "unrelated and dissimilar to the charges alleged

-11-

in the indictment." 692 F.2d at 670. Mauzy argued that rule 404(b) did not govern the admissibility of the evidence, because he contended that it did not apply "to situations in which a defendant wishes to introduce evidence of wrongdoing by another person in order to establish his own innocence." 692 F.2d at 670-71. The Tenth Circuit indicated that it was "not inclined to interpret [rule 404(b)] so narrowly." 692 F.2d at 670-71. The Tenth Circuit explained that its review of the "Advisory Committee Notes on the Proposed Rules [of Evidence] indicate[d] that the members of the committee were concerned not only with the prejudicial impact to a defendant in admission of extrinsic acts as evidence, but also with its limited probative value." 692 F.2d at 671 (alterations in original). The Tenth Circuit held that the trial court properly rejected the evidence as irrelevant, "[p]articularly . . . [where] the evidence offered by Mauzy pertained to activities by [his co-conspirator that were] unrelated and dissimilar to the charges alleged in the indictment." 692 F.2d at 671.

Since United States v. Puckett, the Tenth Circuit has considered the admissibility of prior acts proffered by the defendant, often referred to as "reverse 404(b)" evidence. In United States v. Montelongo, 420 F.3d 1169 (10th Cir. 2005), police found ninety-three kilograms of marijuana in the sleeping compartment of the semi-truck that the defendants were driving. See 420 F.3d at 1171. The owner of the truck testified for the United States, and stated that he "had inspected the truck just before [the defendants] picked it up and had found no marijuana in it." 420 F.3d at 1172. The defendants then made a "reverse 404(b)" argument. 420 F.3d at 1174.

The relevant issue in United States v. Montelongo was whether the defendants could cross examine the owner of the truck that the defendants were driving about a prior incident which occurred "a few months" earlier. 420 F.3d at 1172. Accord United States v. Duran-Moreno, 616 F.Supp.2d 1162, 1165-71 (2009)(Browning, J.)(discussing this Tenth Circuit decision). The

-12-

defendants sought to introduce evidence of a prior incident which occurred a few months before their arrest and which involved marijuana that was found in the sleeping compartment in a different semi-truck that the truck owner possessed.  See 420 F.3d at 1175.  The Tenth Circuit reversed the trial court's refusal to allow cross examination by the defendants regarding "the fact that thirty-four pounds of marijuana were found in duffle bags in the sleeping compartment of a truck owned by [the government witness] just a few months prior to the Defendants' arrests for nearly identical conduct" to defend against a conspiracy to distribute more than fifty grams of marijuana.  420 F.3d at 1176.

     The Tenth Circuit began its analysis in United States v. Montelongo by noting that rule 404(b)

> is typically used by prosecutors seeking to rely on a criminal defendant's prior bad act as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in the crime charged.  The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone, or with other evidence, to negate the defendant's guilt of the crime charged against him."

420 F.3d at 1174.  The Tenth Circuit also noted that "[o]ther circuit courts addressing the issue hold that admissibility of reverse 404(b) evidence depends on a 'straightforward balancing of the evidence's probative value against considerations such as undue waste of time and confusion of the issues.'"  420 F.3d at 1174 (quoting United States v. Stevens, 935 F.2d at 1404-1405).  The Tenth Circuit held that the evidence of the marijuana previously found in another truck owned by the truck owner was relevant to the defendants' defense that they had no knowledge of the marijuana packed in the truck they were driving.  See United States v. Montelongo, 420 F.3d at 1174.   The Tenth Circuit noted that, "[i]n this way, the previous case is relevant as it tends to make it less probable that the defendants knowingly possessed the marijuana or that they knowingly and voluntarily involved themselves in a drug conspiracy."  420 F.3d at 1173.  The Tenth Circuit in United States

v. Montelongo looked at the similarities between the charged matter and the previous incident.  See 420 F.3d at 1174-75. The Tenth Circuit noted that there were several similarities between the two crimes and that the jury could believe that the owner had packed the marijuana in the semi-truck. See 420 F.3d at 1174-75.

Specifically, the Tenth Circuit in United States v. Montelongo noted "the similarities between the two crimes and their temporal proximity . . . makes th[e] evidence probative." 420 F.3d at 1174.   The Tenth Circuit based its opinion on common facts with the prior incident, such as: (i) both trucks were owned by the same person; (ii) the marijuana was packed in duffle bags; and (iii) the marijuana was hidden in the sleeping compartment of the cabin of both tractors.  See 420 F.3d at 1172.  While the Tenth Circuit did not expressly state that a lower standard of similarity applies in reverse 404(b) situations, the Tenth Circuit cited United States v. Stevens, 935 F.2d at 1404, for the proposition that "the similarities . . . make[] th[e] evidence probative" and quoted United States v. Stevens, in a parenthetical following the cite to the Third Circuit case, stating "a lower standard of similarity [between the crime at issue and other crimes evidence] should govern reverse 404(b) evidence because prejudice to the defendant is not a factor."  United States v. Montelongo, 420 F.3d at 1174-75 (quoting United States v. Stevens, 935 F.2d at 1404)(internal quotation marks omitted).

Lastly, the Tenth Circuit noted that the relevance of the proffered evidence was "not substantially outweighed by the risk of confusing the jury or the potential waste of time."  United States v. Montelongo, 420 F.3d at 1175.  It noted that there was no danger of the jurors being distracted from the real issues in the case, because of the similarities between the charged crime and the previous incident.  See 420 F.3d at 1175.  "To the contrary, [the 404(b) evidence] would have highlighted the central issue at trial -- namely, which man was responsible for the contraband."  420

F.3d at 1175.  The Tenth Circuit focused on the question of the evidence's admissibility in the context of the protections afforded by the Sixth Amendment's Confrontation Clause and by cross-examination, and found that the "District Court erred in preventing the defendants from cross-examining [the truck owner] based on Rule 404(b)."  United States v. Montelongo, 420 F.3d at 1175.

In Agushi v. Duerr, 196 F.3d 754 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit decided, as a matter of first impression, that rule 404(b) applied to acts of third parties.  See 196 F.3d at 760.  The Seventh Circuit began its analysis by noting that "[r]ule 404(b) speaks not of the parties to a case but of a 'person.'"  196 F.3d at 760 (quoting Fed. R. Evid. 404(b)).  The Seventh Circuit noted that "[e]vidence regarding other crimes is admissible for defensive purposes if it 'tends, alone or with other evidence, to negate [the defendant's] guilt of the crime charged against him.'"  196 F.3d at 760 (quoting United States v. Stevens, 935 F.2d at 1404)).  The Seventh Circuit explained that, although Huddleston v. United States "involved a situation in which the defendant was the actor, the Court strongly suggested that Rule 404(b) should be applied to any actor."  Agushi v. Duerr, 196 F.3d at 760 (emphasis in original)(citing Huddleston v. United States, 485 U.S. at 685-86)("Extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.").  Relying in part on the Third Circuit's opinion in United States v. Stevens, the Seventh Circuit concluded that, "[b]ased on the Supreme Court's guidance, our sister circuit's reasoning . . . as well as the very language contained in Rule 404(b), we hold that Rule 404(b) does apply to third parties."  Agushi v. Duerr, 196 F.3d at 760.

In 2005, the Seventh Circuit, however, disagreed with a district court's evidentiary ruling

-15-

that held the defense to as rigorous a 404(b) standard as the United States. See United States v. Seals, 419 F.3d 600, 607 (7th Cir. 2005)("Contrary to the district court's statement, the defense is not held to as rigorous of a standard as the government in introducing reverse 404(b) evidence.")(citing Agushi v. Duerr, 196 F.3d at 760). The Seventh Circuit, however, affirmed the district court's decision to exclude the proffered evidence, because it was irrelevant and inadmissible. See United States v. Seals, 419 F.3d at 607. It noted that the similarities between the charged conduct and the previous incident were generic, because the underlying facts were dissimilar. See 419 F.3d at 607. The Seventh Circuit explained that, although "the legal standard for admitting reverse 404(b) evidence is relatively lenient, the evidence still must be relevant." 419 F.3d at 607.

In United States v. McCourt, 925 F.2d 1229 (9th Cir. 1991), the United States Court of Appeals for the Ninth Circuit recognized that rule 404(b) makes no distinction between defendants and third parties in excluding prior-acts evidence to show criminal propensity or as a basis for suggesting the inference that certain conduct was in conformity with it. See 925 F.2d at 1232 ("Because Rule 404(b) plainly proscribes other crimes evidence of 'a person,' it cannot reasonably be construed as extending only to 'an accused.'")(quoting Fed. R. Evid. 404(b)). There is also no exception in rule 404(a) that would permit the use of evidence to show a third person's character for the inference that this person acted in conformity with his character and committed the crime with which defendant is charged.[4] See 925 F.2d at 1231-32 n.2 (citing 2 J. Weinstein & M. Berger,

---

[4] Rule 404(a) reads:

    (a)    Character Evidence.

        (1)    Prohibited Uses. Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person

Evidence ¶ 404[04], at 404-39-40 (1989)).

In <u>United States v. Stevens</u>, the defendant sought to introduce testimony by a victim of a crime different from the one with which the defendant was charged where the victim "was the victim of a crime which was so similar to the instant crime that the investigating officers believed that the same individual had committed both" and the victim "would have testified that he, unlike the [other] victims[,] . . . did not identify [the defendant] as his assailant." 935 F.2d at 1383. "The critical question [wa]s, of course, one of degree of similarity." 935 F.2d at 1401. The Third Circuit held that the "district court imposed too stringent a standard of similarity on [the defendant]." 935 F.2d

---

acted in accordance with the character or trait.

(2)   Exceptions for a Defendant or Victim in a Criminal Case. The following exceptions apply in a criminal case:

(A)   a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

(B)   subject to the limitations in Rule 412, a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted, the prosecutor may:

(i)   offer evidence to rebut it; and

(ii)   offer evidence of the defendant's same trait; and

(C)   in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

(3)   Exceptions for a Witness. Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

Fed. R. Evid. 404(a).

at 1404.  The Third Circuit held that "a lower standard of similarity should govern 'reverse 404(b)'

evidence because prejudice to the defendant is not a factor."  935 F.2d at 1404.  The Third Circuit

then stated that "a defendant may introduce 'reverse 404(b)' evidence so long as its probative value

under Rule 401 is not substantially outweighed by Rule 403 considerations."  935 F.2d at 1405.  The

Third Circuit rejected the United States' contention that a defendant may offer rule 404(b) evidence

only under "hard and fast preconditions," and stated:

> More specifically, the defendant, in order to introduce other crimes evidence, need
> not show that there has been more than one similar crime, that he has been
> misidentified as the assailant in a similar crime, or that the other crime was
> sufficiently similar to be called a "signature" crime. These criteria, although relevant
> to measuring the probative value of the defendant's proffer, should not be erected as
> absolute barriers to its admission.  Rather, a defendant must demonstrate that the
> "reverse 404(b)" evidence has a tendency to negate his guilt, and that it passes the
> Rule 403 balancing test.

935 F.2d at 1405.  The Third Circuit determined that the defendant's proffer was relevant under rule

401, because it made his guilt less probable.  See 935 F.2d at 1405-06.  It then determined that the

proffer did not present a risk of mini-trials or obstruction to the orderly progress of trial.  See 935

F.2d at 1405-06.  The Third Circuit emphasized that its "resolution of this issue [wa]s informed by

[its] general belief that a criminal defendant should be able to advance any evidence that, first,

rationally tends to disprove his guilt, and second, passes the Rule 403 balancing test."  935 F.2d at

1406.

In United States v. Moreau, No. 07-0388, 2008 WL 2229467 (D.N.M. Mar. 12,

2008)(Browning, J.), the Court dealt with a situation where the defendants were charged after they

were stopped while driving a tractor-trailer rig whose trailer, in addition to pallets of fabric,

contained 2700 pounds of marijuana.  See 2008 WL 2229467 at *2.  One defendant wished to

introduce evidence that the owner of the warehouse from which the fabric was loaded, who was to

-18-

be a witness at the trial, had been convicted or arrested as a result of past incidents of drug trafficking, all of which occurred many years before the defendants' arrest.  See 2008 WL 2229467 at *1-2.  The Court held that the evidence of the owner's past bad acts was sufficiently similar to the charged conduct and was sufficiently probative whether one of the defendants was unaware of the marijuana being placed in the trailer, to be admissible under rule 404(b).  See 2008 WL 2229467 at *14-15.

In United States v. Duran-Moreno, the Court addressed a situation where the defendant was charged with drug-possession charges based on a large amount of drugs hidden in the bumper of his vehicle.  See 616 F.Supp.2d at 1164.  Before the defendant owned the vehicle, another individual owned the vehicle who was convicted of  possessing with intent to deliver methamphetamine. See 616 F.Supp.2d at 1164.  The individual had engaged in methamphetamine transactions with police officers and had his home raided pursuant to a search warrant.  616 F.Supp.2d at 1164.  That individual owned the car for about two months before selling it to another person and had not driven the car much, according to the recorded odometer readings.  See 616 F.Supp.2d at 1164.  The Court held that the defendant sought to admit the evidence for "a proper purpose under rule 404(b)," because the "prior acts evidence . . . ma[d]e it less probable [the] defendant knowingly, or knowingly and voluntarily, participated in drug distribution." 616 F.Supp.2d at 1174-75.  The Court found the bad-act evidence probative, because it was sufficiently similar to the charged conduct and not too remote in time temporally to undercut the evidence's probative value.  See 616 F.Supp.2d at 1174-75.

## LAW REGARDING RULE 403

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice. See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989). "[I]t is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter [under rule 403]." United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991)). The Tenth Circuit has recently reminded district courts that they should be "mindful" that "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980). As the Supreme Court of the United States recently noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . . This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(quoting 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)). See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules

401 and 403 . . . .").

Evidence may be unfairly prejudicial if it would likely provoke an emotional response from the jury or would otherwise tend to adversely affect the jury's attitude toward a particular matter. See United States v. Rodriguez, 192 F.2d 946, 951 (10th Cir. 1999). Evidence is not unfairly prejudicial merely because it damages a party's case. See United States v. Caraway, 543 F.3d 1290, 1301 (10th Cir. 2008); United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003); United States v. Martinez, 938 F.2d 1078, 1082 (10th Cir. 1991). Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" United States v. Caraway, 453 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee's note).

## ANALYSIS

The Court will grant the Motion in part and deny the Motion in part. Because Ganadonegro does not oppose limiting his ability to present specific instances of conduct to prove his good character or his ability to refer to the term Indian Country as racist, the Court will grant that portion of the Motion. Because the evidence relating to Monte is relevant, and because the risk of confusion and misleading the jury does not substantially outweigh the evidence's probative value, the Court will deny the portion of the Motion relating to Quintara Smiley's interactions with Monte. Consistent with Ganadonegro's stipulation at the hearing, he may not argue that Monte caused Qila Smiley's death by kicking Quintara Smiley with a steel-toe boot during her pregnancy. Lastly, the Court concludes that the evidence relating to Monte allegedly kicking Quintara Smiley while she was pregnant does not violate rule 404(b) of the Federal Rules of Evidence.

I.    **THE EVIDENCE RELATING TO MONTE IS RELEVANT UNDER RULE 401 AND DOES NOT VIOLATE RULE 403.**

Rule 401 provides: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  The line of inquiry regarding Monte and the evidence Ganadonegro seeks from those questions is relevant.  At the previous trial when Ganadonegro asked some of the witnesses about whether Quintara Smiley may have been associating with Monte generally or the night before Qila Smiley's death, they asserted that they did not know.  Their inability to confirm that she was no longer associating with Monte is relevant under the circumstances.  It shows that they could not conclusively rule out the possibility that Quintara Smiley was still interacting with Monte.  First, this evidence has at least some tendency to make it more probable that Monte had interactions with Quintara Smiley, which increases the probability that Ganadonegro was not the source of Qila Smiley's injuries.  Relevance "depends upon principles evolved by experience or science, applied logically to the situation at hand."  Fed. R. Evid. 401 advisory committee's note.  Rule 401 contains a low threshold for relevance, because "[a]ny more stringent requirement is unworkable and unrealistic."  Fed. R. Evid. 401 advisory committee's note. It is notable that Monte has demonstrated abusive behavior in the past, including beating Quintara Smiley while she was pregnant with Qila Smiley.  See Testimony of Quintara Smiley at 3-4. Quintara Smiley admitted that Monte beat her while she was pregnant at the last trial.  See Testimony of Quintara Smiley at 3-4.  It is plausible that he would also be a person that would abuse or harm a child.  Second, the origin of Qila Smiley's injuries is a fact of consequence in this action. It is true that Quintara Smiley herself denied being with Monte, but it is possible she may have made her denial to avoid bringing up a painful issue and to keep her contact with Monte a secret from her

family and friends.  See Testimony of Quintara Smiley at 2-4.  Monte was Qila Smiley's father, so it is plausible that there may have been some interactions between Quintara Smiley and Monte shortly before Qila Smiley's death.  This line of questioning is relevant.

Additionally, rule 403 does not counsel in favor of limiting Ganadonegro's ability to question these witnesses about Monte.  The Court agrees with Ganadonegro that this evidence as a general matter would not be particularly confusing or misleading to the jury; there were no indications that this limited inquiry was confusing in the first trial.  Jurors have the tools of common experience to assess the likelihood that a given fact occurred.  Particularly on matters such as romantic relationships and human interactions, jurors are more than capable of making reasoned decisions about what likely occurred and rejecting implausible scenarios.  Some of the abuse against Quintara Smiley may be unsettling to some jurors, but many of the allegations against Ganadonegro are also unsettling.  Monte's actions make it a possibility that he could engage in abusive behavior if given the opportunity.  Given the gravity of the charges against Ganadonegro, the Court believes that jurors, without compromising their ability to decide the ultimate issues in the trial, can realistically evaluate the likelihood that Monte was with Quintara Smiley the night before Qila Smiley's death.

It is the United States' burden to show that the risk of misleading or confusing the jury substantially outweighs the evidence's probative value.  See Fed. R. Evid. 403.  While the evidence may not be the most probative evidence that Ganadonegro has to defend against the charges he faces, the Court cannot say that the potential risk of misleading or confusing the jury substantially outweighs the evidence's probative value.  If the jury believes Ganadonegro and concludes that Monte may have injured Qila Smiley, it is likely that they would conclude that there was a reasonable doubt that Ganadonegro caused Qila Smiley's death.  Importantly, Ganadonegro is facing

serious charges that could result in him spending a large portion of his life in federal prison.  There

are high stakes in this case that have consequences for Ganadonegro.  The Court is not inclined to

impose significant restrictions on his ability to present otherwise relevant evidence.

Ganadonegro may also inquire about the specific instance where Monte allegedly kicked

Quintara Smiley.  The United States directs the Court to two paragraphs in the protective services

report:

> Source states that the younger girl came to her house yesterday asking for food.  She
> asked her to find her mom and take her to her mom.  The girl said she is not being
> fed.  She said that she is thrown out of the house at night because her sister's
> boyfriend has a drinking problem.  She said that he kicked her with his steel-toed
> boots on 06/20/07; he punches her (unknown time frames).  Unknown injuries.
>
> . . . .
>
> The 15-year-old sister has a bruise on her right eye.  It is implied by the
> source that the boyfriend caused the black eye.  Source explained that if the
> boyfriend is hitting the 14 year old girl, he may have caused the 15 yo's injury.

Sealed Notice of Submission at 2.  The United States contends that these portions of the protective

services report upon which Ganadonegro relies to establish that this event occurred do not support

his argument that Monte abused Quintara Smiley in this manner.  It argues that the report refers to

Monte kicking Quintara Smiley's sister as opposed to Quintara Smiley, which the second quoted

paragraph illustrates with more specific references to Quintara Smiley.  The first quoted paragraph

of the protective services report is written in a confusing manner and contains ambiguities; it does

not clearly specify whom Monte assaulted on what occasions.  See Sealed Notice of Submission at

2.  It uses ambiguous pronoun references to "she" and "her," which could refer to Quintara Smiley

or Quintara Smiley's sister.  Sealed Notice of Submission at 2.  While the United States would have

a better argument if there were no references to Monte abusing Quintara Smiley in the report, the

report unambiguously refers to Monte abusing Quintara Smiley on at least some occasions -- such

as in the second quoted paragraph.  The United States may ultimately be correct that the report refers

to Monte kicking Quintara Smiley's sister, but the report is sufficiently ambiguous to raise doubts

in the Court's mind about the issue.  Although Quintara Smiley admitted at the last trial that Monte

beat her, including that he beat her while she was pregnant, it is at least plausible that she could have

some bias or motive to limit her testimony about the kicking incident if doing so would make it

more likely Ganadonegro would be convicted.  See Testimony of Quintara Smiley at 3-4.  Her child,

Qila Smiley, is the alleged victim of the crime.  There is a good-faith basis for Ganadonegro's

questions about Monte in light of Quintara Smiley's admission that Monte beat her, the protective

services report, and the nature of the relationship between Monte and Quintara Smiley.  See United

States v. Ruiz-Castro, 92 F.3d 1519, 1528-29 (10th Cir. 1996)("[C]ourts require a 'good faith' basis

before permitting a party to cross examine regarding prior bad acts. . . . 'The general rule in such

situations is that the questioner must be in possession of some facts which support a genuine belief

that the witness committed the offense or the degrading act to which the questioning relates.'"),

overruled on other grounds by United States v. Flowers, 441 F.3d 900 (10th Cir. 2006); Montoya

v. City of Albuquerque, No. 03-0261, 2004 WL 3426435, at *7 (D.N.M. May 18, 2004)(Browning,

J.)("Provided that the Plaintiffs have a good faith basis for such questions, the Court will also allow

the Plaintiffs to question the Defendants regarding Paige's involvement in Holweger's alleged

extramarital affair.").

        Lastly, it is the United States' burden to show that the risk of misleading or confusing the

jury substantially outweighs the evidence's probative value.  See Fed. R. Evid. 403.  While the

evidence regarding the incident where Monte allegedly kicked Quintara Smiley may not be the most

probative evidence that Ganadonegro has to defend against the charges he faces, the Court cannot

say that the potential risk of misleading or confusing the jury substantially outweighs the evidence's

probative value.  The incident may portray Monte as an unlikeable and despicable person, but Ganadonegro is the one on trial.  The risks of confusing the real issues at the trial would be greater if the evidence was highly prejudicial to Ganadonegro.  There is little risk that the jury will not convict Ganadonegro because they do not like Monte.  There is no indication that this evidence confused the jury in the first trial, as interviews with the jurors after trial suggested that all jurors thought Ganadonegro -- not Monte -- was the only one involved in the incident.  On the other hand, if the jury believes Ganadonegro and concludes that Monte may have injured Qila Smiley, it is likely that they would conclude that there was a reasonable doubt that Ganadonegro caused Qila Smiley's death.  Given the serious nature of the allegations in this case, specifically that Ganadonegro allegedly shook and killed Qila Smiley, the Court does not believe that this evidence relating to Monte will cause the jury to decide the case on an improper basis or distract it from the central purposes of the trial.  Ganadonegro is facing serious charges that could result in him spending a large portion of his life in federal prison.  There are high stakes in this case that have consequences for Ganadonegro.  The Court is not inclined to impose significant restrictions on his ability to present otherwise relevant evidence.  Consistent with Ganadonegro's stipulation at the hearing, he may not argue that Monte caused Qila Smiley's death by kicking Quintara Smiley with a steel-toe boot during her pregnancy.

## II.     THE EVIDENCE RELATING TO MONTE'S KICK IS PROPER UNDER RULE 404(b).

The United States did not object to the evidence relating to Monte's kick under rule 404(b) and seek to exclude this evidence under this rule.  Even though the evidence regarding incident where Monte allegedly kicked Quintara Smiley would violate rule 404(b) if offered as a specific instance of Monte's bad conduct to prove conformity with his abusive character when he allegedly

harmed Qila Smiley, it would be permissible evidence under rule 404(b) for several proper purposes, such as to negate Ganadonegro's guilt for the charged crimes, and to show Monte had the intent to harm Qila Smiley and/or Quintara Smiley.  Rule 404(b) evidence is analyzed under a four-part test: (i) whether the evidence is introduced for a proper purpose; (ii) whether the evidence is relevant; (iii) whether the evidence has probative value that is not substantially outweighed by the potential for unfair prejudice; and (iv) whether the party introducing the evidence has precisely articulated the purpose for which the evidence is offered.  See United States v. Hardwell, 80 F.3d at 1488.  "The Tenth Circuit has indicated that rule 404(b) is applicable to evidence a defendant wishes to introduce that relates to wrongdoing by another to establish his innocence."  United States v. Duran-Moreno, 616 F.Supp.2d at 1174 (citing United States v. Puckett, 692 F.2d at 671).  The Tenth Circuit explained in United States v. Puckett that its review of the "Advisory Committee Notes on the Proposed Rules [of Evidence] indicate[d] that the members of the committee were concerned not only with the prejudicial impact to a defendant in admission of extrinsic acts as evidence, but also with its limited probative value."  United States v. Puckett, 692 F.2d at 671.  Additionally, the Tenth Circuit indicated in United States v. Montelongo that rule 404(b) "is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible for defensive purposes if it tends, alone, or with other evidence, to negate the defendant's guilt of the crime charged against him."  420 F.3d at 1174.[5]  Furthermore, rule 404(b)'s plain language indicates that

---

[5]The full quote from United States v. Montelongo is as follows:

Rule 404(b) is typically used by prosecutors seeking to rely on a criminal defendant's prior bad acts as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" in the crime charged.  The Rule is not so limited in its application, however, and evidence of a witness' other wrongs, acts, or crimes is admissible "for defensive purposes if it tends, alone or with other evidence, to negate the defendant's guilt of the crime charged against

it applies to "persons," and applies to civil and criminal cases.  Fed. R. Evid. 404(b).  <u>Accord</u> <u>United</u> <u>States v. Duran-Moreno</u>, 616 F.Supp.2d at 1174.[6]

　　　While Ganadonegro may not introduce this evidence relating to Monte for the improper purpose of demonstrating that Monte acted in conformity with his prior acts, Ganadonegro "may offer the evidence to demonstrate one of the proper purposes recognized under rule 404(b), 'such as proof of motive, opportunity, intent, purpose, plan, knowledge, identity, or absence of mistake or accident.'"  <u>United States v. Duran-Moreno</u>, 616 F.Supp.2d at 1174 (quoting Fed. R. Evid. 404(b)).  The Tenth Circuit has recognized that it is a proper purpose under rule 404(b) to introduce "prior acts evidence to make it less probable a defendant knowingly" committed an offense.  <u>United</u> <u>States v. Duran-Moreno</u>, 616 F.Supp.2d at 1174.  <u>Accord</u> <u>United States v. Montelongo</u>, 420 F.3d at 1173 -75 (recognizing that evidence of prior bad acts was admissible "to negate the Defendants' guilt of the crime charged against them and to establish that Mr. Gomez had knowledge of the marijuana in the truck driven by the Defendants").  It would be a proper purpose under rule 404(b) for Ganadonegro to offer this evidence to decrease the likelihood that he is guilty of the charged crimes and to show that Monte may have had the intent to injure Qila Smiley and/or Quintara Smiley -- assuming the jury believes he was with Quintara Smiley the night before Qila Smiley died.

---

him."  This type of evidence is often referred to as "reverse 404(b)" evidence.

420 F.3d at 1174.

　　　[6]The rules of statutory construction apply to the Federal Rules of Evidence.  <u>See</u> <u>Beech</u> <u>Aircraft Corp. v. Rainey</u>, 488 U.S. 153, 163 (1988)("Because the Federal Rules of Evidence are a legislative enactment, we turn to the 'traditional tools of statutory construction' in order to construe their provisions." (citation omitted)).  "Statutory construction must begin with the language employed by [the writer] and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  <u>Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.</u>, 469 U.S. 189, 194 (1985).

See United States v. Montelongo, 420 F.3d at 1173 -75 (recognizing that evidence of prior bad acts was admissible "to negate the Defendants' guilt of the crime charged against them and to establish that Mr. Gomez had knowledge of the marijuana in the truck driven by the Defendants"); United States v. Duran-Moreno, 616 F.Supp.2d at 1174 ("Duran-Moreno's purpose in introducing Salazar's prior conduct -- to show Salazar had the intent, opportunity, ability, and know-how to place the drugs in the Impala -- is a permissible purpose under rule 404(b) . . . ."). Given that Monte assaulted a pregnant woman, the evidence would also be permissible to show that he has the intent to harm a child. See United States v. Duran-Moreno, 616 F.Supp.2d at 1174. Monte's prior conduct along with evidence that he might have been with Quintara Smiley the night before Qila Smiley's death would tend to show that Ganadonegro is less likely to be guilty of the charged crime, that Monte had the opportunity to harm Qila Smiley, and that he had the intent to do so. The evidence of prior bad acts does "not necessarily or solely involve trying to prove that [Monte] acted in conformity with a character for committing" abusive conduct. United States v. Duran-Moreno, 616 F.Supp.2d at 1174-75. Thus, the first prong of the 404(b) test regarding the evidence being admissible for a proper purpose is met. Ganadonegro has then identified a proper purpose for this evidence separate and apart from using it as character evidence, and thus has satisfied the fourth prong for 404(b) evidence as stated in United States v. Hardwell.[7]

The evidence regarding Monte's bad acts is also sufficiently similar to the charged conduct to support a finding that the evidence is proper under rule 404(b). "In rule 404(b) situations, including reverse 404(b) situations, courts have paid particular attention, under the relevance

---

[7]If the United States wants a limiting instruction, to limit the purposes for which Ganadonegro may use the evidence to proper purposes only, the United States may draft and provide to the Court an appropriate limiting instruction.

-29-

requirement, to the similarity of the evidence about the bad act to the charged conduct." United States v. Duran-Moreno, 616 F.Supp.2d at 1175. "The Tenth Circuit has suggested, although not specifically held, however, that a lower standard of similarity . . . should govern reverse 404(b) evidence because prejudice to the defendant is not a factor." United States v. Duran-Moreno, 616 F.Supp.2d at 1175 (quoting United States v. Montelongo, 420 F.3d at 1174-75)(internal quotation marks omitted).

Under either a relaxed standard or under the usual rule 404(b) standard, the Court concludes that there is sufficient similarity here. The Tenth Circuit has looked to "the similarities between the [bad act and the charged conduct] and their temporal proximity" to evaluate the probative value of the evidence of bad acts. United States v. Montelongo, 420 F.3d at 1174-75. The bad-act evidence is somewhat similar to the charged conduct given that both sets of alleged conduct -- beating a pregnant woman and shaking a baby -- demonstrate a specific intent to harm Quintara Smiley and/or Qila Smiley or lack of concern about harming a mother and/or her child. See United States v. Duran-Moreno, 616 F.Supp.2d at 1164, 1174-75 (concluding that the charged conduct of possessing drugs hidden in a car bumper was sufficiently similar to third party's prior conviction for drug trafficking when third party previously owned the vehicle in which drugs were found, even though there was no direct evidence that the third party used the vehicle for drug trafficking). Furthermore, when coupled with the possibility that Monte may have been with Quintara Smiley the night before Qila Smiley's death and injured the child, the bad-act evidence relates more specifically to the charged conduct. There is some temporal distance between the events regarding Monte beating Quintara Smiley while pregnant and Ganadonegro allegedly killing Qila Smiley -- who was approximately ten months old -- but the possibility that Monte may have been with Quintara Smiley the night before Qila Smiley's death and injured the child creates a stronger logical connection

between the events.  See United States v. Montelongo, 420 F.3d at 1173-75 (concluding that, even though a few months time passed between defendants' conduct relating to charged drug trafficking and bad acts also relating to drug trafficking, there was sufficient temporal proximity for rule 404(b) purposes); United States v. Moreau, 2008 WL 2229467, at *1, *14-15 (recognizing that witness' prior drug trafficking conduct and convictions arising out of a period from 1985 to 1993 were sufficiently proximate in time to defendant's drug charges relating to conduct in 2007).  "[W]hile there is no specific number to satisfy temporal proximity, proximity is one of the factors the Court must use in determining the probative value of the proffered evidence."  United States v. Duran-Moreno, 616 F.Supp.2d at 1175.  For example, the Court has permitted a defendant charged with drug trafficking crimes to question a witness about the witness' prior drug trafficking conduct and convictions that were over fifteen years old, because "the witness' prior conduct [was] consistent with trafficking drugs" and because "the Court [did] not believe temporal proximity is the determinative factor that should govern admissibility."  See United States v. Moreau, 2008 WL 2229467, at *1, *14-15.  The gap in time in this case is notably much lower than that in United States v. Moreau.  The Court concludes that there is sufficient similarity here between the evidence of bad acts and the charged conduct, in part because the relationship between Quintara Smiley and Monte had ended not long before Qila Smiley's death and may have been ongoing.

In relation to the second and third prongs of the 404(b) analysis, the Court has already concluded that the evidence is relevant under 401, because it tends to make Ganadonegro's guilt less probable.  Likewise, the evidence is not so confusing or misleading to violate rule 403.  A jury is sufficiently capable of discounting this evidence if it feels Ganadonegro has presented an implausible scenario regarding Monte's alleged involvement in Qila Smiley's death.  Given the serious nature of the allegations in this case, specifically that Ganadonegro allegedly shook and

killed Qila Smiley, the Court does not believe that this evidence relating to Monte will cause the jury to decide the case on an improper basis or distract it from the central purposes of the trial.  There is no indication that this evidence confused the jury in the first trial, as interviews with the jurors after trial suggested that all jurors thought Ganadonegro -- not Monte -- was the only one involved in the incident.  Ganadonegro faces serious charges and should receive some flexibility in presenting his defense.  As the Tenth Circuit has discussed, there are also Confrontation Clause considerations that counsel against excluding this evidence -- evidence which the Court has found to be otherwise permissible.  See United States v. Montelongo, 420 F.3d at 1175 ("[A] constitutional violation occurs when the defendant is prohibited from engaging in otherwise appropriate cross-examination that, as a result, precludes him from eliciting information from which jurors could draw vital inferences in his favor." (internal quotation marks omitted)).

**IT IS ORDERED** that the United States' Motion *in Limine* to Exclude References to Specific Instances of Alleged Abuse on a Continued Relationship with Harrington Monte, Specific Instances of the Defendant's Good Character and References to the Term "Indian Country" as "Racist," filed February 10, 2012 (Doc. 245), is granted in part and denied in part.  Because Defendant Kalvest Ganadonegro does not oppose limiting his ability to present specific instances of conduct to prove his good character or his ability to refer to the term Indian Country as racist, the Court will grant that portion of the Motion.  Because the evidence relating to Harrington Monte is relevant, and because the evidence's risk of confusing or misleading the jury does not substantially outweigh its probative value, the Court will deny the portion of the Motion relating to Smiley's interactions with Monte.  The evidence regarding Monte allegedly kicking Quintara Smiley while she was pregnant is also proper under rule 404(b) of the Federal Rules of Evidence.  Consistent with Ganadonegro's stipulation at the hearing, he may not argue that Monte caused Qila Smiley's death

-32-

by kicking Quintara Smiley with a steel-toe boot during her pregnancy.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
  United States Attorney
Jennifer M. Rozzoni
Jeremy Pena
  Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Kari Converse
Brian A. Pori
  Assistant Federal Public Defenders
Federal Public Defender Office
District of New Mexico
Albuquerque, New Mexico

      *Attorneys for the Defendant*